Carl L. WULFF, Petitioner,

v.

### OFFICE OF PERSONNEL MANAGEMENT, Respondent.

No. 97–3380.

United States Court of Appeals, Federal Circuit.

Jan. 6, 1998.

Carl L. Wulff, Fallbrook, CA, pro se.

Rodger D. Citron, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for respondent. With him on the brief were Frank W. Hunger, Assistant Attorney General and Kathryn A. Bleecker, Assistant Director.

Before PLAGER, CLEVENGER, and BRYSON, Circuit Judges.

PLAGER, Circuit Judge.

Carl L. Wulff, appearing *pro se*, appeals a decision of the Merit Systems Protection Board ("Board"), Docket No. SF–0831–97–0210–I–1. In its decision the Board found that the amount at which the Office of Personnel Management ("OPM" or "agency") reinstated Mr. Wulff's disability annuity was, with one modification, correct. After careful examination of the issues raised by Mr. Wulff's appeal, we affirm.

## BACKGROUND

The appeal brought by Mr. Wulff raises a troubling question, one of first impression. The situation is one in which a Government employee is retired on disability and given a disability retirement annuity. The annuity is subsequently terminated because the employee either recovers from his disability or becomes gainfully employed. Years later, pursuant to the applicable statute, the annuity is reinstated because the employee's disability recurs or the employee is no longer gainfully employed. The question is whether, at reinstatement, the annuitant simply receives the same dollar amount he was receiving years earlier, or whether the annuity dollar amount is adjusted so as to include any cost-of-living adjustments ("COLAs") that would have been made to the annuity during the intervening period between termination and reinstatement had the annuity continued uninterrupted.

The agency takes the position that under the controlling law no adjustment can be made for the intervening COLAs. Mr. Wulff has the opposite view; he argues that he is entitled to the intervening COLAs.

Briefly, Mr. Wulff was employed as a draftsman for the United States Geological Survey, beginning on January 20, 1953. In 1961, Mr. Wulff was deemed disabled and granted a disability retirement annuity at the gross rate of $180 per month. The annuity was increased to $189 per month in 1964. In 1965, based on a medical examination, the agency determined that Mr. Wulff was "no longer totally disabled for useful service within the meaning of the Civil Service Retirement Act." Based on this determination, Mr. Wulff's disability annuity was terminated and he was removed from the disability annuity roll.

After 1965, Mr. Wulff was employed in various positions in the private sector until 1987. In 1990, Mr. Wulff applied for reinstatement to the disability rolls and the agency granted his request retroactive to 1989.

The agency determined that, pursuant to 5 U.S.C. § 8337(e), his annuity should be restored to the same monthly rate that he was receiving at the time his annuity was terminated in 1965, *i.e.*, $189 per month.

The agency did increase Mr. Wulff's annuity somewhat. In 1974, Congress legislated a $240 increase to annuities for employees separated from service prior to October 20, 1969. *See* Act of Apr. 26, 1974, Pub.L. No. 93–273, § 2(a), 88 Stat. 93 (codified at 5 U.S.C. § 8339 note (1994)). The legislation explicitly stated that the increase applied regardless of when the annuity commenced. *Id.* at § 3, 88 Stat. at 94. Thus, the $240 increase applied to Mr. Wulff's annuity and translated to a $20 increase in his monthly rate. The agency provided this increase to arrive at the rate of $209 per month. In addition, the agency has agreed to provide Mr. Wulff the COLA made to annuities in 1989, apparently because his annuity was reinstated retroactively to 1989. However, the agency refused to include any other COLAs for the approximately 25 year period between 1965 and 1989. The Board upheld the agency's determination.

### DISCUSSION

### I

■ When reviewing a decision by the Board, we may reverse only if: (1) the decision was arbitrary, capricious, an abuse of discretion, or unlawful; (2) procedurally deficient; or (3) unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c) (1994). Statutory interpretation, such as that presented by the issue in this case, is a question of law over which this court exercises complete and independent review. *See Hodges v. Secretary of Dep't of Health & Human Serv.*, 9 F.3d 958, 960 (Fed.Cir.1993).

### II

Under the Civil Service Retirement Act ("CSRA"), upon becoming disabled a Government employee is, under specified conditions, deemed retired and given a disability retirement annuity. *See* 5 U.S.C § 8337(a) (1994). The annuity is typically paid at a monthly rate. *See* 5 U.S.C. § 8345(a) (1994).

If the employee subsequently recovers from his disability or is restored to earning capacity, the annuity is terminated. *See* 5 U.S.C. § 8337(d) (1994). An employee is deemed restored to earning capacity "if in any calendar year the income of the annuitant ... equals at least 80 percent of the current rate of pay of the position occupied immediately before retirement." *Id.* By measuring the employee's present income relative to the *current* rate of pay of his prior position, the employee is protected from being deemed restored to earning capacity merely because inflation has increased the dollar amount of his income.

Prior to a 1961 amendment to the CSRA, the termination of an annuity upon recovery from disability or restoration of earning capacity was permanent; there was no provision for later reinstatement of the annuity. *Compare* Civil Service Retirement Act Amendments of 1956, Pub.L. No. 84–854, sec. 401, § 7(e), 70 Stat. 736, 751, *with* Civil Service Retirement Act Amendments of 1961, Pub.L. No. 87–350, sec. 4(a), § 7(e), 75 Stat. 770, 771. The 1961 amendment provided for reinstatement upon recurrence of the disability or loss of earning capacity. Amendments of 1961, sec. 4(a), § 7(e), 75 Stat. at 771. The legislative history indicates that the amendment was made to eliminate the inequity and hardship of not providing reinstatement in such circumstances, and in recognition that, in the absence of provision for reinstatement, an annuitant would be reluctant to return to work for fear that his annuity would be terminated and never reinstated even if he again lost his income-producing capacity. H.R.Rep. No. 961–87, at 5–6, 22–23 (1961), *reprinted in* 1961 U.S.C.C.A.N. 3157, 3161–62, 3176–77.

The current version of the reinstatement provision first enacted by the 1961 amendment appears at 5 U.S.C. § 8337(e) (1994):

If an annuitant whose annuity is heretofore or hereafter terminated because of an earning capacity provision[, *e.g.*, due to earning over 80 percent of the current rate of pay of the prior position,] ... his annuity shall be restored at the *same rate* ... [if] his income ... [becomes] less than 80

percent of the *current rate* of pay of the position occupied immediately before retirement. If an annuitant whose annuity is heretofore or hereafter terminated because of a medical finding that he has recovered from disability ..., his annuity shall be restored at the *same rate* ... [upon] medical examination showing a recurrence of the disability. (emphasis added).

█ The controlling issue in this case is the meaning and effect of the clause "shall be restored at the same rate." Does "same rate" mean the same periodic dollar amount, *e.g.,* the same monthly dollar amount, that the annuitant was receiving when his annuity was terminated, or does it include the intervening COLAs between termination and reinstatement? For the following reasons, we determine that "same rate" cannot be interpreted to include intervening COLAs.

### III

The term "rate" when referring to amounts has two distinct meanings. One is a measured quantity of something, that is, a specific amount ('my rate for legal services is $200 an hour'). The other is a measure of a part to a whole, that is, a proportion ('the tax rate is 60%'). *See* Webster's Third New International Dictionary 1884 (1986). In the CSRA Congress consistently used the word to refer to a periodic dollar amount, such as an amount of dollars per year. *See, e.g.,* 5 U.S.C. § 8331(4) (1994) (defining "average pay" in terms of annual rates of pay). Thus, the plain meaning of "same rate" within the context of the CSRA is that a disability retirement annuity is reinstated at the same periodic dollar amount that was in effect when the annuity was terminated.

This interpretation of "same rate," which prohibits inclusion of intervening COLAs, is supported by the legislative history of COLAs. The initial amount of a disability retirement annuity is computed based on the employee's pay history and years of service, subject to certain minimums. *See* 5 U.S.C. § 8339(a), (g) (1994). Prior to 1962, the annuity amount, once determined, was not automatically increased by COLAs or other means. Rather, Congress would periodically legislate increases. *See, e.g.,* Act of June 25,

1958, Pub.L. No. 85–465, 72 Stat. 218 (current version at 5 U.S.C. § 8340 note (1994) (1958 Increase in Annuities)). In 1962, annual automatic COLAs, linked to changes in the consumer price index ("CPI"), were enacted. *See* Postal Service and Federal Employees Salary Act of 1962, Pub.L. No. 87–793, sec. 1102(b), § 18, 76 Stat. 832, 869 (current version at 5 U.S.C. § 8340 (1994)). Because automatic COLAs were not in place when the reinstatement provisions for disability annuities were enacted in 1961, we cannot infer that Congress intended to incorporate the COLAs within the reinstatement provisions by way of the term "same rate."

Furthermore, interpreting "same rate" to include COLAs would be inconsistent with the term "current rate," which appears along with the term "same rate" in the reinstatement provisions of 5 U.S.C. § 8337(e). In fact, as seen in the above quoted text of § 8337(e), the terms "current rate" and "same rate" appear in the same sentence. The use of the term "current rate"—which clearly includes any increases that occur over time—along with the term "same rate" in the same sentence indicates that the two terms have different meaning.

In other sections of the CSRA, Congress has explicitly directed the inclusion of intervening COLAs. For example, in 1978 Congress legislated the restoration of certain survivor annuities "at the rate which would have been in effect if the annuity had not been terminated." Act of July 10, 1978, Pub.L. No. 95–318, sec. 1(b)(1), 92 Stat. 384 (codified at 5 U.S.C. § 8341 note (1994) (Restoration of Survivor Annuities for Certain Widows and Widowers Remarrying Before July 18, 1966, and Where Member Died Before January 8, 1971)). Consistent with this provision's clear inclusion of COLAs, the Senate Report accompanying the legislation states that such surviving spouses "get the benefit of all cost-of-living increases in annuities that became effective between the date the annuity was terminated and the date it was restored...." S.Rep. No. 95–905, at 3 (1978), *reprinted in* 1978 U.S.C.C.A.N. 1036, 1038.

Similarly, Congress explicitly provided that its own members receive intervening COLAs:

> If a Member [of Congress] receiving annuity from the Fund becomes employed in an appointive or elective position, annuity payments are discontinued during the employment and resumed on termination of the employment in the amount equal to the sum of the amount of the annuity the member was receiving immediately before the commencement of the employment *and the amount of the increase which would have been made in the amount of the annuity under section 8340 of this title during the period of the employment if the annuity had been payable during that period* ....

5 U.S.C. § 8344(d) (1994) (emphasis added).

Why Congress did not provide for the inclusion of intervening COLAs upon the restoration of a disability annuity is unclear. Perhaps it was simply an oversight. In a case such as that of Mr. Wulff, reinstating an annuity years later at the same dollar amount without regard to inflation appears to work a hardship and seems to discourage persons on the disability roll from returning to gainful employment, and hence, seems inconsistent with Congress' purpose for enacting the reinstatement provision. A sensible treatment of the case would more likely take into account intervening COLAs when restoring a disability annuity so that the individual would not be penalized by the period during which he was off the disability roll. Nevertheless, a close reading of the statutory provisions leaves us convinced that restoration to the "same rate" was intended by Congress to mean the same periodic dollar amount in effect at termination.

OPM had arrived at the same conclusion. The agency's view of the meaning of "same rate" did not arise out of this particular litigation, but was previously established through formal adoption of an interpretive regulation. *See* 5 C.F.R. § 831.1211(f) (1997) ("A reinstated annuity ... is paid at the rate of annuity to which the annuitant was entitled on the date his or her disability annuity was last discontinued."). As such, though not binding upon us, it is entitled to interpretive weight.

The United States Constitution limits payments from the Federal Treasury to those authorized by statute. *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 424, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990). Without statutory provision for inclusion of intervening COLAs at reinstatement, this court cannot order such inclusion. *Cf. Downs v. Office of Personnel Management,* 69 F.3d 1141, 1143 (Fed.Cir. 1995) (holding that without statutory provision for reinstatement the court lacked authority to reinstate child survivor annuity). Thus, if the matter is to be corrected, Congress will have to address the issue legislatively.

## IV

Mr. Wulff also challenges the propriety of the termination of his disability annuity in 1965. The Board concluded that Mr. Wulff had not properly appealed that issue and expressed doubt as to whether Mr. Wulff could challenge the termination so many years later. We find no error in the Board's conclusion and share its doubt as to the timeliness of Mr. Wulff's challenge.

## CONCLUSION

Accordingly, we affirm the decision of the Merit Systems Protection Board.

*AFFIRMED.*