Ramona H. KINDALL, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

No. 02–3371.

United States Court of Appeals, Federal Circuit.

DECIDED: Oct. 21, 2003.

Walter W. Moore, Richard Hamlin Attorneys, of Los Angeles, CA, for petitioner. With him on the brief was Richard F. Hamlin.

Michael O'Connell, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. On the brief were David M. Cohen, Director; James M. Kinsella, Deputy Director; and Michael F. Kiely, Trial Attorney. Of counsel on the brief was Paul St. Hillaire, Attorney, Office of the General Counsel, Office of Personnel Management, of Washington, DC.

Before LOURIE, Circuit Judge, PLAGER, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

LOURIE, Circuit Judge.

Ramona Kindall appeals from the final decision of the Merit Systems Protection Board affirming the Office of Personnel Management's ("OPM's") determination not to increase her survivor annuity to reflect 1976–1997 cost-of-living adjustments. *Kindall v. Office of Pers. Mgmt.*, 91 M.S.P.R. 609 (MSPB 2002) ("*Final Decision*"). Because we hold that the Board's decision is in accordance with law, we affirm.

## BACKGROUND

Mrs. Kindall was married to Gordon Hodge until Mr. Hodge's death in December 1972. *Id.* slip op. at 2. Mrs. Kindall subsequently began receiving survivor annuity payments that Hodge had elected for her in connection with his retirement un-

der the Civil Service Retirement System. *Id.* In September 1976, when Mrs. Kindall was fifty-five years old, she married Vernon Kindall. *Id.* Pursuant to the version of 5 U.S.C. § 8341(d) that was in effect at that time, the OPM terminated Mrs. Kindall's survivor annuity as a result of her remarriage.[1] *Id.* The Kindalls' marriage ended in August 1997, however, and Mrs. Kindall later applied for a resumption of her survivor annuity. *Id.* In September 1999, the OPM reinstated Mrs. Kindall's annuity at $377.00 per month, the rate at which it had been being paid when it was terminated in 1976, *id.,* in accordance with 5 U.S.C. § 8341(g). At the relevant time, that statute provided that,

> [i]n the case of a surviving spouse whose annuity under this section is terminated because of remarriage before becoming 55 years of age, annuity *at the same rate* shall be restored commencing on the day the remarriage is dissolved by death, annulment, or divorce.

5 U.S.C. § 8341(g) (1994) (emphasis added).[2]

Mrs. Kindall requested reconsideration of the rate of her annuity payments from the OPM, asserting that the OPM should have included cost-of-living adjustments in the amount of the annuity and that she was accordingly entitled to receive between $1138 and $1168 per month instead of $377.00 per month. *Final Decision,* slip op. at 2. On reconsideration, the OPM upheld its decision. *Id.* at 2–3. Mrs. Kindall then appealed to the Board, asserting, among other things: that the phrase "at the same rate" in 5 U.S.C. § 8341(g) does not mean "in the same amount"; that, under 5 U.S.C. § 8340(b), the OPM was required to increase her annuity by the percent change in the price index for the base quarter of 1997 over the price index for the base quarter of 1976, the latter being "the preceding year in which an adjustment ... was made"; and that the OPM's failure to increase her annuity is inconsistent with the legislative history of a July 10, 1978 Act of Congress, Pub. L. No. 95–318, 92 Stat. 384 ("1978 Act"). *Id.* at 3.

The Administrative Judge ("AJ") assigned to Mrs. Kindall's case affirmed the OPM's decision, citing *Wulff v. Office of Personnel Management,* 133 F.3d 880 (Fed.Cir.1998), for its holding that the term "same rate" in another provision of the Civil Service Retirement Act ("CSRA") does not include cost-of-living adjustments.[3] *Kindall v. Office of Pers. Mgmt.,* SF–831M–01–0435–I–2 (MSPB Oct. 3, 2001). Mrs. Kindall then appealed to the full Board, which also affirmed, *Final Decision,* slip op. at 1, and this timely appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

---

1. In relevant part, that provision read as follows:

   This annuity and the right thereto terminate on the last day of the month before the widow or widower—

   ...

   (B) remarries before becoming 60 years of age.

   5 U.S.C. § 8341(d) (1970). The statute was amended in 1984 by redesignating subsection (B) as "(ii)", and by substituting "55" for "60" therein. Pub.L. No. 98–615, § 2(4)(C)(ii), 98 Stat. 3195, 3199–3200 (1984).

2. Like § 8341(d), 5 U.S.C. § 8341(g) was amended in 1984 by substituting "55" for "60." 98 Stat. 3195 at 3200. Subsection (g) was also amended in 1978 by striking "after July 18, 1966" following the word "terminated." Pub. L. No. 95–318, § 2, 92 Stat. 384, 384 (1978), *infra.*

3. Before the Board, the OPM also rescinded a determination that it had previously made, not at issue in this appeal, that Mrs. Kindall had been overpaid $643.46 as a result of an incorrect reinstatement date.

## DISCUSSION

■ Congress has expressly limited the scope of our review in an appeal from the Board. Specifically, we must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). There are no disputed factual issues in this case. The only issue presented to and decided by the Board, and hence the only issue before us, is whether an annuity reinstated under 5 U.S.C. § 8341(g) should include intervening cost-of-living adjustments for the period from termination of the annuity under § 8341(d) to reinstatement, a matter of statutory interpretation. This court reviews the Board's statutory interpretation *de novo*. *Wallace v. Office of Pers. Mgmt.*, 283 F.3d 1360, 1361 (Fed.Cir.2002).

■ In support of her position that the Board erred in affirming the OPM's decision, Mrs. Kindall again argues that the Board erred in concluding that the phrase "at the same rate" in § 8341(g) means "in the same amount." Mrs. Kindall also repeats her argument that § 8340(b) required the OPM to compare the price index for 1997 to the price index for 1976, because that was "the preceding year in which an adjustment under this subsection was made."[4] Mrs. Kindall further argues that *Wulff* is inapplicable because, *inter alia*, it related to disability retirement, not survivor annuities, and because it explicitly distinguished statutes such as § 8341 on the basis that the Senate Report accompa-

nying the 1978 Act stated that such statutes call for cost-of-living adjustments. Moreover, according to Mrs. Kindall, just as the court concluded in *Wulff* that Congress's use of "current rate" and "same rate" in 5 U.S.C. § 8337 meant that it intended those terms to have distinct meanings, the fact that the word "amount" is used in ten different places in § 8341 means that "rate" must have a different meaning from "amount." Mrs. Kindall also contends that the Board ignored Congress's intent to protect elderly widows such as Mrs. Kindall from the ravages of inflation. In particular, Mrs. Kindall points to Congress's reaffirmation of its intent to protect surviving spouses from inflation, manifest in its 1978 Act making § 8341(g) retroactive to protect spouses who remarried prior to July 18, 1966.

The government responds that the plain, unambiguous language of § 8341(g) supports the Board's decision: A survivor's annuity is terminated if the surviving spouse remarries, but the terminated annuity is restored "at the same rate" if the remarriage is dissolved. The government points out that, although *Wulff* related to a different provision than is at issue here, there is no basis for interpreting the phrase "at the same rate" differently in the two cases. The government also responds to Mrs. Kindall's argument regarding § 8340(b), pointing out that § 8340(c), which explicitly limits subsection (b) (*i.e.*, "[e]xcept as provided in subsection (c) of this section"), states in relevant part that "[e]ligibility for an annuity increase under this section is governed *by the commencing date* of each annuity payable from the

---

**4.** In relevant part, 5 U.S.C. § 8340(b) provides:

> Except as provided in subsection (c) of this section, effective December 1 of each year, each annuity payable from the Fund having a commencing date not later than such

> December 1 shall be increased by the percent change in the price index for the base quarter of such year over the price index for the base quarter of the preceding year in which an adjustment under this subsection was made....

Fund as of the effective date of an increase" (emphasis added). The government argues that, because Mrs. Kindall had no right to an annuity between 1976 and 1997, her former annuity rights terminated after her remarriage in 1976. Consequently, according to the government, Mrs. Kindall's present annuity rights did not commence until the dissolution of her remarriage in 1997.

We agree with the government that the statutory language at issue is clear. As we noted in *Wulff,* generally the term "rate" can mean either "a measured quantity of something, that is, a specific amount ('my rate for legal services is $200 an hour')" or "a measure of a part to a whole, that is, a proportion ('the tax rate is 60%')," but "[i]n the CSRA, Congress consistently used the word [rate] to refer to a periodic dollar amount, such as an amount of dollars per year." Indeed, because there is no statement in the CSRA of any basis (*e.g.,* akin to salary or capital gain in the context of a tax rate) to which the annuity rate could be proportional, only the former definition of "rate" identified in *Wulff* (*i.e.,* "a specific amount") makes sense in the context of § 8341.

Although we agree with Mrs. Kindall that *Wulff* is not controlling, because we were then interpreting a different statutory provision than is presently at issue, our reasoning in that case applies with equal force here, and hence is persuasive. Congress could have provided for cost-of-living adjustments for surviving spouses in Mrs. Kindall's position, but it chose not to. Section 8341(g) does not say, for example, "at the rate which would have been in effect if the annuity had not been terminated," as Congress provided in § 1(b) of the 1978 Act for widows who remarried before July 18, 1966, but after attaining age 60. That subsection provided:

(1) In the case of a remarriage occurring after the surviving spouse became sixty years of age, the annuity shall be restored to such spouse under subsection (a) of this section only if any lump sum paid on termination of the annuity is returned to the Civil Service Retirement and Disability Fund. If such amount is paid, the annuity shall be so restored commencing on the effective date of this section *at the rate which would have been in effect* if the annuity had not been terminated.

(2) In the case of a remarriage occurring before the surviving spouse became sixty years of age, the annuity shall be restored to such spouse under subsection (a) of this section.... If the requirements of the preceding sentence are satisfied, such annuity shall be so restored commencing on the effective date of this section or on the first day of the month following that date the remarriage is dissolved by death, annulment, or divorce, whichever date is later, *at the rate which was in effect* when the annuity was terminated.

92 Stat. at 384 (emphases added). Contrary to Mrs. Kindall's suggestion, the Board's (and our) interpretation of § 8341(g) does not result in widows who remarried before July 18, 1966 being treated differently from similarly situated widows who remarried on or after that date as a result of the above-quoted portion of the 1978 Act. As explained in the Senate Report accompanying that Act,

Section 1 of the bill provides that the annuity of a surviving spouse of an employee which was terminated because of the remarriage of such spouse before July 18, 1966 ... shall be restored.

. . .

If the surviving spouse remarried *after becoming 60 years of age,* the annuity will be restored commencing on the effective date of this section *at the rate*

*which would have been in effect if the annuity had not been terminated.* Thus, the surviving spouse will get the benefit of all cost-of-living increases in annuities that became effective between the date the annuity was terminated and the date it is restored under this section.... If the surviving spouse remarried *prior to age 60,* the annuity will be restored commencing on the effective date of this section or on the first day of the month following the date the remarriage is dissolved, whichever date is later, *at the rate which was in effect when the annuity was terminated.* ... These provisions governing restoration of annuities in cases of remarriage before age 60 are identical to the provisions in existing law (5 U.S.C. 8341(g)) which heretofore have been applicable only to such remarriages that occurred on or after July 18, 1966.

S. Rep. No. 95–505, at 3–4 (1978), *reprinted in* 1978 U.S.C.C.A.N. 1036, 1038 (emphases added). Prior to the enactment of the 1978 Act, there was no provision for annuity benefits for surviving spouses who remarried prior to July 18, 1966, regardless of their ages and with no provision for reinstatement of the annuity upon dissolution of the remarriage. The 1978 Act provided for such benefits. However, it is clear from the plain language of that Act, 92 Stat. at 384, as well as from the quoted passage from the Senate Report, that a distinction was made between surviving spouses who remarried after becoming sixty years of age before July 18, 1966, for whom Congress provided for reinstatement of annuity with cost-of-living adjust-

ments, and those who remarried before their sixtieth birthdays, for whom reinstatement was only afforded if the remarriage had been dissolved, and, even then, only "at the rate which was in effect when the annuity was terminated."[5]

We also agree with the government that § 8340(b) must be read in conjunction with subsection (c) of that provision. Because the commencement date of Mrs. Kindall's annuity for § 8340(c) was the date her remarriage terminated, there was, in 1997, no "preceding year in which an adjustment under [subsection (b)] was made."

Article I, § 9, cl. 7 of the Constitution limits payments from the Treasury to those authorized by statute, *Office of Pers. Mgmt. v. Richmond,* 496 U.S. 414, 424, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), and, without statutory provision for inclusion of intervening cost-of-living adjustments at reinstatement, this court cannot order such inclusion. Although the result seems unfair to Mrs. Kindall, it is the role of Congress, not the courts, to rectify the problem.

We have considered Mrs. Kindall's other arguments and find them unpersuasive.

## CONCLUSION

Because the Board did not err in its construction of § 8341(g), and its decision is not otherwise contrary to law, that decision is

*AFFIRMED.*

---

**5.** Mrs. Kindall's argument that *Wulff* distinguished § 8341(g) is likewise unavailing. The statement in *Wulff* that the above-quoted Senate Report allowed for cost-of-living adjustments clearly referred to the discussion of surviving spouses who remarried prior to July 18, 1966 after becoming sixty years of age. Just as Congress made no such statement in connection with § 8337(e), the provision at issue in *Wulff,* Congress has not made any such statement regarding surviving spouses who remarried before the age of 60 before the 1984 amendment, or 55 after that amendment, and thus no cost-of-living adjustments apply.