**Kay Coles JAMES, Director, Office of Personnel Management, Petitioner,**

v.

**Mary Rose TABLERION, Respondent.**

No. 03–3029.

United States Court of Appeals, Federal Circuit.

April 13, 2004.

did not err in removing Ms. Tablerion from employment, we reverse.

Kenneth D. Woodrow, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for petitioner. On the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Todd M. Hughes, Assistant Director; and Timothy P. McIlmail, Trial Attorney. Of counsel on the brief were Mark A. Robbins, General Counsel; Steven E. Abow, Deputy Assistant General Counsel; and Becky Kumar, Attorney, Office of General Counsel, Office of Personnel Management, of Washington, DC. Of counsel were Brent M. McBurney and Allison A. Page, Attorneys, United States Department of Justice, of Washington, DC.

Robert H. Shirver, III, Assistant Counsel, National Treasury Employees Union, of Washington, DC, argued for respondent. With him on the brief were Gregory O'Duden, General Counsel; and Barbara A. Atkin, Deputy General Counsel.

Before CLEVENGER, LINN, and PROST, Circuit Judges.

CLEVENGER, Circuit Judge.

Kay Coles James, Director of the Office of Personnel Management, seeks review of the final reconsideration decision of the arbitrator ordering reinstatement of Mary Rose Tablerion to her position in the Internal Revenue Service ("IRS") and awarding her back pay. *In the Matter of a Controversy Between the Department of the Treasury, Internal Revenue Service, Employer, and National Treasury Employees Union, Re: Mary Rose Tablerion,* April 16, 2002. Because the arbitrator incorrectly interpreted the applicable law, and because under the law as correctly interpreted the Internal Revenue Service

## I

Mary Rose Tablerion ("Tablerion" or "Ms. Tablerion") was a GS–11 Revenue Agent who worked for the IRS in Tempe, Arizona. Ms. Tablerion is divorced. According to a divorce decree, she and her ex-husband are each entitled to claim a tax exemption for one of their two children. If a parent wanted to claim a child care credit in connection with a child for whom the ex-spouse is entitled to claim an exemption, the parent must execute a Form 8332 to show that he or she is relinquishing entitlement to claim that child as an exemption. The form has two sections, one for relinquishing the entitlement for the current year and the second for relinquishing the entitlement for future years. Ms. Tablerion obtained and executed two sets of Form 8332. She filled out one set to provide that she would relinquish her claim to an exemption for her son for current and future years. She filled out the other set to provide that her ex-husband would relinquish his claim to an exemption for her daughter for current and future years. After receiving the forms, Mr. Tablerion called Ms. Tablerion and informed her that he was only going to execute the section of the form relinquishing entitlement for her daughter for the current year. Ms. Tablerion asked for the forms back, and Mr. Tablerion refused. The following morning Ms. Tablerion called Mr. Tablerion and left the following message:

Uh, if you're not gonna sign 'em I want all four of those back. I'm not signing anything then and you don't get the child care credit then. If you don't, if I don't get 'em, all four of them back, uh, I will write the IRS and, and, uh inform them to audit your returns. Uh, that something was attached that, uh, we did

not agree to then since you wouldn't sign mine. Bye.

Mr. Tablerion eventually reported the statement to the Treasury Inspector General for Tax Administration, whose office conducted an investigation. On the basis of the statement "I will write the IRS and, and, uh inform them to audit your returns," the agency's deciding official forwarded a removal recommendation to the agency's review board, which in turn sent the matter to the Commissioner of Internal Revenue, who determined that the required penalty of removal would not be mitigated. The Commissioner made the decision not to mitigate the penalty even though the review board had recommended mitigation, and therefore advised the deciding official to issue the removal decision. The IRS thus removed Ms. Tablerion from her position pursuant to the Internal Revenue Service Reform and Restructuring Act of 1998 ("the Act"), Pub.L. No. 105–206, tit. I, § 1203, 112 Stat. 685, 720–21 (codified at 26 U.S.C. § 7804 note). Represented by the National Treasury Employees Union, Ms. Tablerion grieved her case in arbitration.

## II

The arbitrator was asked to determine whether the IRS had erred in removing Ms. Tablerion pursuant to section 1203 of the Act ("section 1203"). Section 1203 entitled "Termination of Employment for Misconduct" states:

(a) In general. Subject to subsection (c), the Commissioner of Internal Revenue shall terminate the employment of any employee of the Internal Revenue Service if there is a final administrative or judicial determination that such employee committed any act or omission described under subsection (b) in the performance of the employee's official duties. Such termination shall be a removal for cause on charges of misconduct.

(b) Acts or omissions. The acts or omissions referred to under subsection (a) are—

. . . .

(10) threatening to audit a taxpayer for the purpose of extracting personal gain or benefit.

On its face, the Act requires (1) that the employee's act or omission be committed "in the performance of the employee's official duties" and (2) when a threat to audit is involved, that the threat be made "for the purpose of extracting personal gain or benefit." *Id.* The arbitrator held, and Ms. Tablerion does not contest, that her "threat" was for the purpose of extracting personal gain, *i.e.*, return of the tax forms.

Reasoning that the statute was ambiguous and penal in nature, the arbitrator interpreted the "in the performance of the employee's official duties" provision of section 1203 in favor of Ms. Tablerion. The arbitrator defined "in the performance of the employee's official duties" to mean, "leveraging ... her status as an IRS employee." In light of the above interpretation, the arbitrator reasoned that Ms. Tablerion's statement: "I will write the IRS and, and, uh inform them to audit your returns" did not "suggest[ ] the use of influence or her position" because it exhibited a lack of control; she did not state that she would either audit Mr. Tablerion or have him audited. In the arbitrator's view, Ms. Tablerion's statement was "no different than what might be expected of someone who is not employed by the IRS." The arbitrator thus held that Ms. Tablerion's statement did not satisfy the requirement of "in the performance of the employee's official duties."

The arbitrator then considered the question of whether Ms. Tablerion's statement constituted a threat to audit under the statute. In so doing, the arbitrator again construed the statute in Ms. Tablerion's

favor. In addition, the arbitrator held that Congress, when enacting the statute in suit, must have been aware of settled judicial interpretations of the word "threat," and for that reason the arbitrator relied on *Metz v. Department of the Treasury*, 780 F.2d 1001 (Fed.Cir.1986), to determine whether Ms. Tablerion's statement was "threatening."

*Metz* concerned the removal of a federal employee who threatened to kill his superiors. In *Metz*, the Merit Systems Protection Board ("Board") sustained Metz's removal, holding that the statements made by Metz met the requisite test: would "a reasonable person hearing Metz' [sic] statements ... think those statements were threats." *Id.* at 1004. On appeal to this court, we agreed that the test used by the Board is the correct test, citing our earlier holding in *Meehan v. United States Postal Service*, 718 F.2d 1069, 1075 (Fed. Cir.1983). *See Metz*, 780 F.2d at 1002 n. 2. The Board sustained Metz's removal based on the testimony of five witnesses: two testified that they did not perceive Metz's statements as threats; two testified that they had no expectation that Metz would harm his superiors or did not consider his statements serious enough to warrant reporting; and the testimony of the fifth witness was discredited by the presiding official. *Id.* at 1004. In those circumstances, this court stated that certain factors needed consideration to determine whether the record in the case contained substantial evidence supporting the Board's conclusion that Metz had made a threat to kill his superiors.

■ The criteria mentioned by the court in *Metz* by which to weigh the testimony of the witnesses were: "(1) The listener's reactions; (2) The listener's apprehension of

harm; (3) The speaker's intent; (4) Any conditional nature of the statements; and (5) The attendant circumstances." *Id.* at 1002. After particularly crafting these factors to test for a threat to do bodily harm to another person, this court applied the factors to the testimony of the five witnesses, concluding, ultimately, that the record lacked substantial evidence that Metz had threatened to kill his superiors.

Even though the *Metz* case, as well as the *Meehan* case to which the *Metz* opinion referred, dealt with threats of bodily harm, the arbitrator in this case applied the criteria stated in *Metz*. According to the arbitrator, the first four criteria favored Ms. Tablerion, because she had testified that she had really not meant to provoke an audit of Mr. Tablerion's returns, and because Mr. Tablerion must not have taken the statement seriously because he did not report it to the agency immediately. Also, the arbitrator found that Mr. Tablerion had felt no apprehension of harm to himself, but instead had reacted to Ms. Tablerion's statement with vengeance. Further, the arbitrator considered Ms. Tablerion's statement to be conditional, a fact, under that *Metz* criterion, favorable to Ms. Tablerion. Finally, the arbitrator found that the attendant circumstances cut against Ms. Tablerion, because she did work for the IRS and she did use the word "audit" in her statement. With four of the five criteria favoring the conclusion that Ms. Tablerion had not made a "threat to audit" under the statute, the arbitrator decided that Ms. Tablerion's removal should be extinguished and that she should be returned to work with appropriate relief.

OPM appealed, and on October 2, 2002, we granted OPM's petition for review [1] of

---

1. OPM petitioned under 5 U.S.C. § 7703(d), claiming the arbitrator "erred in interpreting a civil service, law, rule, or regulation affecting personnel management and that the [ar-

bitrator's] decision will have a substantial impact on a civil service law, rule, or regulation."

the arbitrator's decision. *James v. Tablerion*, 51 Fed.Appx. 856 (Fed.Cir.2002).

### III

On appeal the government argues that the arbitrator misinterpreted the law and that under the correct interpretation the removal was justified. According to the government, the arbitrator erred by (1) interpreting section 1203 to only include statements that indicate control over the audit process, thereby excluding statements by IRS employees that could have been made by non-IRS employees; and (2) using *Metz* to determine whether a statement is threatening. For her part, Ms. Tablerion concedes that section 1203 prohibits employees from threatening audits for personal gain; that prohibited threats can be made by off-duty employees; and that the statute prohibits IRS employees from making statements that a member of the public could lawfully make. Her argument is that after filtering the evidence through the *Metz* criteria, substantial evidence supports the arbitrator's conclusion that her statement was not actionable. For the reasons that follow, we agree with the government.

### IV

 The decisions of arbitrators in grievances affecting federal employees are reviewed under the same standard of review that is applied to decisions from the Board. *Giove v. Dep't of Transp.*, 230 F.3d 1333, 1338 (Fed.Cir.2000). Accordingly, we affirm a decision of the arbitrator unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. *Id.* We review the Board's, and thus the arbitrator's, statutory interpretation de novo. *Kindall v. OPM*, 347 F.3d 930, 932 (Fed. Cir.2003).

### A

After a careful review of the statutory language and legislative history we are convinced that it was error for the arbitrator to tilt the playing field in Ms. Tablerion's favor when interpreting the statute. As we explain below, any ambiguity in the statute, on the point of "in the performance of the employee's official duties" is resolved by the legislative history. The statute is no more penal than any other provision of law that calls for removal from duty for actionable misconduct.

Congress intended to prevent all IRS employees from using the prospect of an audit to seek a personal benefit. Nothing in the legislative history expressly limits the application of the relevant sections to only employees who are on-duty at the time they engage in prohibited conduct. Moreover, the legislative history makes clear that the conduct section 1203(b)(10) is intended to prevent includes off-duty conduct. Section 1203, "Termination of Employment for Misconduct," is part of Title I subtitle C of the Act. Title I pertains to "Reorganization of Structure and Management of the Internal Revenue Service" while subtitle C pertains to "Personnel Flexibilities." 112 Stat. 685. Subsection (b)(10) of 1203, which mandates the termination of an employee, who by act or omission "in the performance of the employee's official duties ... threaten[s] to audit a taxpayer for the purpose of extracting personal gain or benefit," was introduced as an amendment and adopted on May 7, 1998. *See* 144 *Cong. Rec.* S4486 (May 7, 1998). The purpose of the amendment was, inter alia, to "provide for the termination of employment of IRS employees for ... threatening an audit for retaliatory purposes." *Id.* The floor comments make clear that the amendment was made based on testimony before the Senate Finance Committee to the effect

that IRS employees were "threatening to audit people for personal gain." *Id.* The proceedings that introduced the amendment describe one example of conduct that is intended to result in mandatory termination:

> We heard an assertion that a police officer had stopped an IRS agent and was going to write him a ticket, and the IRS agent allegedly had told the officer that if he wrote the ticket, he was going to get audited.

*Id.* The example is not limited to on-duty conduct, and we think common sense dictates that this example includes off-duty conduct thereby making clear that Congress intended section 1203 to cover off-duty conduct. We additionally note that the amendment adding subsection (b)(10) also added subsections (b)(8) (willful failure to file a tax return) and (b)(9) (willful understatement of Federal tax liability) both of which mandate termination for off-duty conduct.

 In light of Congress' intent, we reject the arbitrator's assertion that a threat to audit is not "in the performance of the employee's official duties" when the threat to audit does not expressly reflect either control over the audit process or the ability to effect an audit. An IRS employee who is completely incapable of effecting an audit is nonetheless subject to the statutory sanctions of section 1203 for misusing her position as an IRS employee when she makes a prohibited threat to audit for personal gain. Under the arbitrator's view of the law, a clear, unambiguous threat to audit made for personal gain would be excused when the person making the threat does not state that they have the power to effect an audit, or is incapable of effecting an audit. If the law only prohibits threats of audits made by IRS employees who either can, or state they can, deliver on the threat, the agency will be ill-equipped to protect its image and

integrity. As we explain below in Part B, by enacting section 1203(b)(10), Congress sought to stop IRS employees from making threats to audit for their personal gain. For that reason, the statute has a simple, blunt and effective message: if an *IRS employee* makes what from an objective perspective a reasonable person would understand to be a threat to audit, the employee has violated the statute and is subject to the penalty of removal. Accordingly, the arbitrator's determination that Ms. Tablerion's statement was not "in the performance of the employee's official duties" because it did not "suggest[ ] the use of influence or her position" to cause the audit of her ex-husband's tax returns is erroneous.

Further, we reject the rationale of the arbitrator that "in the performance of the employee's official duties" can be construed by reasoning that any statement that could be made by a non-IRS employee should not be taken to be a statement made "in the performance of the employee's official duties." The fact that a person not employed by the IRS may, without violating the statute in suit, threaten someone with an IRS audit, is no reason to assume that Congress would excuse the same statement made by an IRS employee. Instead, the legislative history is quite clear that threats to audit made by IRS employees must be discouraged by the penalty of removal. Accordingly, a threat to audit made "in the performance of the employee's official duties" means only that an IRS employee makes the threat.

### B

We turn next to the arbitrator's interpretation of the statutory provision "threatening to audit." The arbitrator erred in holding that Ms. Tablerion was entitled to a favorable statutory construction and likewise erred in thinking that the

criteria used in *Metz* to test the reliability of a threat to do bodily harm are applicable to the setting in which an employee of the IRS threatens to provoke an audit of another person for the purpose of extracting personal gain or benefit.

First, we disagree with the arbitrator that the statute is ambiguous in its reference to "threatening to audit." The starting point for interpreting a statute is the language of the statute itself. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). When there is no "clearly expressed legislative intention to the contrary," the language of the statute "must ordinarily be regarded as conclusive." *Id.* Where, as here, the statutory language is plain and unambiguous, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917) (internal quotation marks omitted)). The common meaning of "threat" is "an expression of intention to inflict" an unwelcome condition or burden on the person to whom the statement or communication is directed. *See, e.g., Merriam–Webster's Collegiate Dictionary* 1228 (10th ed.1998). Accordingly, a statement by an IRS employee reflecting the intention to inflict an audit satisfies the "threatening to audit" element of section 1203 of the Act.

Second, although not needed here to inform our decision, we think it clear from the legislative history of the statute in suit that Congress felt an urgent need to protect the integrity of the IRS by preventing all IRS employees from making any threats to audit taxpayers, when those threats, as in this case, are for the personal gain of the person making the threat.

The statutory framework established by Congress to deal with a category of misbehavior, including threats to audit, emphasizes the seriousness of the various misbehaviors, for the law requires that any employee found to have engaged in such misbehavior be removed. An internal process in the agency, the one used in this case, exists to allow the affected employee an avenue for review within the agency. The Commissioner of the IRS is required to impose the penalty of removal for the specified forms of misbehavior unless the Commissioner in his sole discretion determines that removal is inappropriate. The Commissioner's determination is final and not subject to judicial review. Section 1203(c)(3), 112 Stat. at 721–22.

Thus, Congress has limited the role of the courts under the given statutory scheme. Courts are available to hear challenges as to whether a threat, as commonly defined, has been made. That is, under our law, the test is whether the words in question would be understood by a reasonable person hearing them to be a threat. This is an objective test that is not overcome by the subjective intents or understandings of the parties to the statement in question.

In this case, Ms. Tablerion invoked the administrative process in the agency seeking to upset the deciding official's determination that she had made a prohibited threat, or at least to convince the Commissioner that a penalty short of removal would be sufficient. In those efforts, she failed. Some of the considerations we mentioned in *Metz* are the kinds of factors that we expect a person in Ms. Tablerion's position would advance, first to the deciding official, and then to the tiers of subsequent review, to demonstrate that, due to subjective reasons, a statutory "threat" should be excused in order to avoid the penalty of removal.

■ However, there is no doubt that Ms. Tablerion uttered words that a reasonable person would have understood to be a threat to audit. Here, the arbitrator, by applying law developed in the setting of Board cases, where the Board itself is authorized to mitigate penalties, used the subjective understandings of the participants to determine that what facially is without question a threat to audit was, in reality, not meant or understood by the participants to be a threat. This was error in the application of the statute.

The system created by Congress to discourage IRS employees from engaging in certain forms of misconduct, including making threats to audit for personal gain, makes sense. The statute sets forth a strict rule of conduct: if any of the prohibited acts are committed, removal is the penalty, subject only to amelioration by the agency itself, with no judicial review of the decision to grant or withhold relief from the default penalty of removal.

Employing the *Metz* criteria after the opportunity for amelioration within the agency has passed is inconsistent with achieving the policy of strict liability that underlies the statute. For courts to rely on subjective criteria to excuse what are, to a reasonable person, unquestionable facial threats would undercut the authority of the Commissioner to implement the statute, which has been entrusted to him by Congress. This would be so even if the *Metz* criteria as a whole were relevant to the IRS audit threat situation. This is even more so when the criteria are in the main unsuited to the situation at hand.

As noted above, the *Metz* criteria were developed to test the subjective underpinnings of a threat to do bodily harm. The notion of apprehension of harm is particularly relevant to one who is threatened with bodily harm, but is ill suited outside that frame of reference. The conditional nature of a statement surely cannot convert a threat to audit for some personal gain into a non-threat. The element of personal gain conveyed by the speaker (here, to gain return of the four forms) is itself the condition, the non-occurrence of which will trigger implementation of the threat. This consideration, then, is wholly inapposite to the threat to audit situation. Other considerations mentioned in *Metz*, *i.e.*, the intent of the speaker and the reaction of the listener to the message, may, in some circumstances, lead to the conclusion that an otherwise prohibited threat to audit for personal gain was simply made in jest among friends. But those circumstances are the raw material that Congress intended the Commissioner to address in the event an IRS employee seeks to avoid the penalty of removal for an otherwise prohibited threat.

Further support for not hiving the *Metz* criteria onto the question of whether an impermissible threat to audit has been made comes from *Metz* itself, and the Supreme Court case cited by this court in the *Metz* opinion, *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). *Metz*, 780 F.2d at 1002 n. 3. Both cases were concerned with the question of whether the person speaking the threat intended to carry out the threat. To answer that question, it is pertinent to delve into the subjective state of mind of the person making the threat, and that of the person to whom the threat is directed. As we read the intent of Congress in establishing the law prohibiting IRS employees from making threats to audit, sufficient harm is done to the integrity of the IRS by the utterance of the threat, without regard to whether the speaker actually meant to carry out the threat. This necessarily is so, since the law reaches employees who are incapable of causing an audit to occur. Thus, whether the threat to audit is likely to be carried out is not a pertinent question when deciding whether an impermissi-

ble threat has been made. The threat to audit that has no hope of fruition is no less an offense under the statute than a threat that is assured of completion. *Metz* provided a way to answer a question that is not asked when determining whether an impermissible threat to audit has been made. In short, the rationale underlying the formulation of the *Metz* criteria is inapplicable to the question of whether a statutory threat, per se, has been made.

As noted above, the word "threat" in the statute simply refers to a statement by one person to another in which the speaker is expressing an intent to inflict an unwelcome condition or burden, in this case, an audit of tax returns. The objective test we apply is one that simply reflects the will of Congress that such threats to audit not be made, period, when made for personal gain. When an IRS employee states to another person that the person's tax return will be audited unless something is done for the speaker, that statement has been deemed by Congress to be a sufficient threat to warrant removal unless, upon hearing all the explanations of the circumstances, the Commissioner alone determines that the value to the agency of continued employment of the subject employee outweighs any harm done to the agency by the statement.

## V

When the law is applied to the facts in this case, it is clear that Ms. Tablerion engaged in conduct for which Congress intended she be terminated. She is an IRS employee. The personal gain she sought was the return of four forms, *i.e.,* "I want all four of those [forms] back." Her words are undoubtedly understood by a reasonable person hearing them to be a threat, *i.e.,* "[I]f I don't get 'em, all four of them back, uh, I will write the IRS and, and, uh inform them to audit your returns." After agency review of the statement and her explanations, the Commis-

sioner decided not to mitigate her removal. Accordingly, the decision of the arbitrator must be reversed.

## COSTS

No costs.

*REVERSED.*