# United States Court of Appeals for the Federal Circuit

04-3068

BARBARA LANGSTON,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Barbara Langston, of West Point, Utah, pro se.

Tara K. Hogan, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. On the brief were Peter Keisler, Assistant Attorney General, David M. Cohen, Director, Bryant G. Snee, Assistant Director, and Cristina C. Ashworth, Trial Attorney. Of counsel on the brief was James Muetzel, Attorney-Advisor, Office of Personnel Management, of Washington, DC. Of counsel was Michael Bahler, Attorney, Civil Division.

Appealed from:    United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

04-3068

BARBARA LANGSTON,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED:  January 26, 2005

_____

Before LOURIE, CLEVENGER, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

Barbara Langston appeals from the decision of the Merit Systems Protection Board affirming the denial of survivor annuity benefits by the Office of Personnel Management ("OPM").  Langston v. Office of Pers. Mgmt., No. DE-0843-01-0295-I-1 (M.S.P.B. Aug. 24, 2001) ("Initial Decision").  Because the Board misinterpreted the meaning of the term "in residence" in 5 U.S.C. § 8441(4)(C), we reverse.

## BACKGROUND

Barbara Langston was married to Doyle Langston, a federal employee.  They had two children, Matthew and Stephen, born in 1978 and 1979, respectively.  Doyle Langston died in December 1994; at the time of his death, he was eligible for benefits under the Federal Employees' Retirement System ("FERS").

In January 1995, Barbara Langston applied for survivor annuity benefits for her two sons pursuant to FERS. However, Matthew and Stephen were entitled to benefits under the Social Security Act that exceeded the calculated FERS benefits. OPM thus denied Ms. Langston's claim until such time as the children's Social Security benefits were terminated and then only if Matthew and Stephen satisfied the applicable statutory definition of "child."

In December 2000, Ms. Langston reapplied for FERS survivor benefits for her two sons, as their Social Security survivor benefits had ended. In particular, she sought student benefits for Matthew and Stephen, stating that they were enrolled as full-time students at Ogden-Weber Applied Technology Center ("OWATC") in Ogden, Utah. In response, OPM requested additional documentation to determine the number of hours that Matthew and Stephen attended classes at OWATC. OWATC replied that Matthew and Stephen were enrolled in the Apprentice Electrician Program, which required only six hours per week of classroom attendance, but which also, as part of the course requirements, included work alongside a state-licensed employer. Accordingly, every week, Matthew and Stephen attended six hours of class at OWATC and worked thirty-four hours at a local electrician's shop as paid apprentices. For their work experience, they received educational credit toward a Utah state Journeyman's license.

In a February 2001 initial decision, OPM denied Ms. Langston's claim because Matthew and Stephen did not meet the eligibility requirements under 5 U.S.C. § 8441(4)(C). OPM determined that, because their training was conducted in a work environment, their studies were not considered a full-time course of study or training "in

residence." Ms. Langston requested reconsideration of that initial decision, which OPM denied in April 2001.

Ms. Langston then appealed to the Merit Systems Protection Board, and in August 2001, an Administrative Judge ("AJ") decided that Matthew's and Stephen's training at OWATC did not meet the statutory requirements for FERS benefits. Initial Decision, slip op. at 6. The AJ held that the plain meaning of the phrase "in residence" requires that "the student is inherently present, i.e., present more often than not, at the school." Id. The AJ thus agreed with OPM that students must obtain the majority of their training at OWATC. Id. Because the greater part of Matthew and Stephen's training was in a working environment, the AJ affirmed OPM's reconsideration decision. Id. at 6-7.

Ms. Langston petitioned for review of the initial decision by the full Board, which concluded that she had not presented any new, previously unavailable evidence. The Board denied her petition for review, making the AJ's initial decision final. Langston v. Office of Pers. Mgmt., No. DE-0843-01-0295-I-1 (M.S.P.B. Aug. 28, 2003). Langston timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000); see Briggs v. Merit Sys. Prot. Bd., 331 F.3d 1307, 1311 (Fed. Cir. 2003).

Questions of law, such as statutory interpretation, are subject to complete and independent review by this court. Hodges v. Sec'y of Dep't of Health & Human Servs., 9 F.3d 958, 960 (Fed. Cir. 1993). In construing a statute, our analysis begins with the language of the statute, and where the statutory language is clear and unambiguous, it generally ends there as well. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999); Terry v. Principi, 367 F.3d 1291, 1294 (Fed. Cir. 2004).

On appeal, Langston argues that OPM and the Board have misinterpreted the term "in residence" in the context of 5 U.S.C. § 8441(4)(C). She contends that because her sons met the residency requirements of the full-time course of study for which they were enrolled at a recognized educational institution, they should be eligible for student benefits under FERS. In response, OPM asserts that the Board properly construed the statute to require that students "in residence" spend the majority of their time in training at a particular institution. OPM argues that because Matthew and Stephen Langston spend the majority of their training in a work environment away from OWATC, they are not "in residence" at an educational institution and thus not eligible for FERS benefits.

We agree with Langston that the Board misinterpreted the meaning of the language "in residence." Section 8441 of Title 5 of the United States Code provides, in relevant part:

> [T]he term "child" means . . . such unmarried dependent child between 18 and 22 years of age who is a student regularly pursuing a full-time course of study or training in residence in a high school, trade school, technical or vocational institute, junior college, college, university, or comparable recognized educational institution.

5 U.S.C. § 8441(4)(c) (2000) (emphasis added).

According to the Board, following OPM's view, "in residence" requires that a student be present at the school more often than not. Thus, if a majority of a student's time is in residence at a covered institution of learning, then the statutory residence requirement would be satisfied. We do not agree with the Board's interpretation that the term "in residence" means that a student must be "present more often than not" at the school, a quantitative standard that is arbitrary. The phrase "in residence" must be read in the context of "a full-time course of study or training."

While it is true that we ordinarily defer to OPM's statutory interpretation to the extent that a statute is ambiguous, Wallace v. Office of Pers. Mgmt., 283 F.3d 1360, 1362-63 (Fed. Cir. 2002), here OPM has not interpreted the statute at issue and has simply denied Langston's claim. Indeed, the most that the Government argues is that OPM has published an employee handbook on FERS and the Civil Service Retirement System. However, that reference only indirectly comments on the nature of eligible training under the statute and does not interpret the "in residence" language.

OPM has defined "full-time course of study" for purposes of the statute through its regulations as, inter alia, a "noncorrespondence course." 5 C.F.R. § 843.410(b)(1) (2004). A correspondence course is typically one that does not involve any classroom attendance. A noncorrespondence course therefore involves some amount of physical presence in the classroom. Giving effect to the regulation, "full-time course of study" thus means a course of study that at least requires some form of attendance at the learning institution.

We do note that the term "in residence" cannot mean that the student must physically live in residence in a dormitory of the institution, as many institutions have no

dormitories, particularly the high schools, trade schools, or technical or vocational institutes recited in the statute. Moreover, even schools with dormitories may consider students to be in residence if they physically live at home.

The question, then, is the extent of physical presence required in order for a course of study to qualify for the statutory benefits, and the academic institution's criteria for defining its requirements for full-time study are key to this determination. For example, a vocational school may offer a course of study to learn to type that requires only one hour a day of in-classroom work, but, like the course of study taken by the Langston sons, requires out-of-classroom work to buttress the in-classroom education, such as two hours of typing practice at home for every hour of in-classroom attendance. In this example, as in the case at hand, the academic institution has set the "residence" requirement for the full-time course of study and stipulated that the course of study also include a non-classroom, or "nonresident" component.

To exclude such situations from coverage under the statute is unsound. If an academic institution concludes that only a certain amount of physical presence in the institution is necessary to satisfy the requirements of its otherwise qualifying full-time course of study, what rational explanation is there for OPM to demand a greater amount of physical presence in the school in order for the child to be considered in residence under FERS?

In the context of the statute, "in residence" in the covered schools does require some element of physical presence, but only that amount specified by the institution to meet the requirements for its course of study. This interpretation is in harmony with OPM's interpretation of "full-time course of study" and respects the capacity of

academic institutions to decide the amount of physical presence in class that is necessary to provide the educational result to which the full-time course is aimed. There is no question here that the Langston sons were enrolled in a full-time course of study at OWATC and that the school had prescribed six hours of classroom attendance as the residence requirement for the course. There is also no question that the Langston sons met the residence requirement set by the school and thereby satisfied the correct interpretation of "in residence" set forth in the statute. The amount of time a student spends away from the classroom is irrelevant to the statute, as long as the student in question meets the "in residence" requirements of an otherwise qualifying full-time course of study. Thus, we reverse the Board's decision denying the Langston sons' entitlement to student benefits.

## CONCLUSION

Because the Board misinterpreted the meaning of the term "in residence" in 5 U.S.C. § 8441(4)(C), we reverse the Board's decision.

### <u>REVERSED</u>