# United States Court of Appeals for the Federal Circuit

---

**KELLY L. STEPHENSON,**
*Petitioner,*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent.*

---

2012-3074

---

Petition for review of the Merit Systems Protection Board in case no. PH0841100307-I-1.

---

Decided: January 18, 2013

---

ROBERT R. MCGILL, Attorney at Law, of Walkersville, Maryland, argued for petitioner.

MATTHEW F. SCARLATO, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK T. MANHART, Assistant Director.

---

Before NEWMAN, PROST, and REYNA, *Circuit Judges*.

PROST, *Circuit Judge*.

This appeal presents an issue of statutory interpretation arising from 5 U.S.C. § 8452 and section 223 of the Social Security Act, 42 U.S.C. § 423.  Pursuant to § 8452, the Office of Personnel Management ("OPM") must reduce a Federal Employees Retirement System ("FERS") disability retirement annuity for any month in which the recipient is also "entitled" to Social Security Administration ("SSA") disability benefits under section 223.  Kelly L. Stephenson petitions for review of a final decision of the Merit Systems Protection Board ("Board"), which affirmed a decision by OPM denying Mr. Stephenson's request to have his FERS disability retirement annuity recalculated to account for the cessation of his monthly SSA disability benefits.  Because the Board erred in determining that Mr. Stephenson remained "entitled" to SSA disability benefits under section 223 of the Social Security Act and that his monthly FERS disability annuity was therefore correctly offset, we reverse and remand.

## BACKGROUND

Mr. Stephenson began receiving a FERS disability retirement annuity on May 4, 2005.  He also applied for SSA disability benefits, as he was required to do as an applicant for FERS disability retirement, and SSA determined that he was entitled to receive monthly SSA disability benefits beginning July 2005.  As required by statute, OPM reduced Mr. Stephenson's FERS disability annuity to account for the monthly SSA disability benefits to which he was entitled.  *See* 5 U.S.C. § 8452(a)(2)(A); 42 U.S.C. § 423.

The Social Security Act allows a person receiving SSA disability benefits to test his or her ability to work during

a period of nine months, referred to as a "period of trial work" or "trial work period," without losing his or her benefits. *See* 42 U.S.C. §§ 422, 423. In May 2009, Mr. Stephenson completed a nine-month trial work period in which he demonstrated his ability to work. Following the completion of his trial work period, SSA notified Mr. Stephenson that because he was able to perform "substantial work," it had determined that his disability had ended, and that he was "*not entitled* to Social Security disability payments beginning September 2009." Resp't's Supplemental App. 3 (emphasis added). SSA further noted:

> You get an *extended period of eligibility* that begins right after the trial work period. This is a 36-month period when we restart payments for any month(s) your work is not substantial if your health problems still meet our rules. Your *extended period of eligibility* months are June 2009 through May 2012.

*Id.* (emphases added).

Because Mr. Stephenson stopped receiving SSA disability benefits, he requested that OPM terminate the offset in his FERS annuity. On September 21, 2009, OPM denied Mr. Stephenson's request, explaining:

> Federal law (section 8452[a][2][A] of title 5, United States Code) requires that FERS disability benefits be reduced if the disability annuitant is also eligible to receive benefits from the Social Security Administration (SSA). Your FERS disability benefits were reduced because you are eligible to receive benefits from SSA. The law requires that the reduction be based on *eligibility* for Social Security benefits, not the actual receipt of Social Security benefits.

> Since you retain full eligibility of your Social Security benefits, we cannot honor your request to eliminate the Social Security offset of your FERS annuity.

*Id.* at 5. Mr. Stephenson sought reconsideration, which OPM denied on February 25, 2010, explaining:

> Your annuity was reduced because you were eligible to receive benefits from SSA. The law requires that the reduction in your annuity remain based on *entitlement* to Social Security benefits and not the *actual receipt* of such benefits. Though your employment resulted in the suspension of your SSA benefits, you still retained eligibility because you are still deemed disabled.

*Id.* at 8.

Mr. Stephenson appealed OPM's decision to the Board. An administrative judge denied the appeal. Mr. Stephenson then filed a petition for review, which two of the three members of the Board denied in a final nonprecedential order dated December 13, 2011. *See Stephenson v. Office of Pers. Mgmt.*, No. PH0841100307-I-1 (M.S.P.B Dec. 13, 2011) ("*Final Order*"). The majority acknowledged § 8452's use of the word "entitled," not "eligible," but nevertheless found that Mr. Stephenson remained "entitled" to SSA disability benefits during the 36-month period following his trial work period. *Id.*, slip op. at 3-6. For support, the majority cited a prior Board opinion in a case involving overpayment to a woman whose SSA disability benefits were suspended because she was found to be "doing substantial work." *Cohron v. Office of Pers. Mgmt.*, 96 M.S.P.R. 466 (2004). In *Cohron*, the Board found that the petitioner "'continued to be entitled to, or eligible for, SSA disability benefits . . . despite the suspension of those benefits,' and that during that time,

OPM was required to pay her a reduced FERS annuity amount." *Final Order*, slip op. at 4 (quoting *Cohron*, ¶ 16). The *Cohron* Board found further support for this result in "42 U.S.C. § 423(a)(1), the Social Security Act, which states that termination of SSA benefits shall not occur at any time before the first month following the 36-month extended period of eligibility." *Id.*, slip op. at 4-5. In view of the above, the Board majority in the present case found that OPM's interpretation of the FERS disability statute—which OPM is charged with administering—was reasonable and therefore entitled to deference. *See id.*, slip op. at 5.

In a footnote at the end of its opinion, the Board majority also expressed concern that if OPM did not continue to deduct the Social Security disability benefits from Mr. Stephenson's FERS disability payments, he would "receive an unwarranted windfall"—i.e., "the unreduced FERS annuity and the money earned from working." *Id.*, slip op. at 6 n.4. As an additional concern, the majority noted that during the 36-month extended period of eligibility, SSA would restart payments for any month in which Mr. Stephenson's work was not substantial and his health problems continued to satisfy SSA's rules. This, according to the majority, "could well cause an unworkable administrative hardship for OPM, resulting in constant litigation about whether OPM was correctly offsetting SSA benefits for any given month during the 36-month period." *Id.*

Board Vice Chairman Anne Wagner filed a dissenting opinion. She read the plain language of the Social Security Act to mean that Mr. Stephenson did not have a legal right to payment for any month in which he performed substantial work, and therefore he was not "entitled" to receive SSA disability benefits for the period in question. She reasoned that OPM "has conflated the concepts of

'entitlement' and 'eligibility' when they are clearly separate concepts under the SSA statute." *Id.*, dissent slip op. at 2. After analyzing the relevant statutes and SSA regulations, she concluded that because Mr. Stephenson was performing substantial gainful activity, "the plain language in SSA's statute does not entitle him to any benefits; rather, it merely provides a mechanism for prompt resumption of such benefits in the event an individual becomes unable to perform substantial gainful activity." *Id.*, dissent slip op. at 4.

Mr. Stephenson filed a petition for review of the Board's final decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

This court will set aside a decision of the Board only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review questions of law, such as statutory interpretation, de novo. *Kindall v. Office of Pers. Mgmt.*, 347 F.3d 930, 932 (Fed. Cir. 2003). "In construing a statute, our analysis begins with the language of the statute, and where the statutory language is clear and unambiguous, it generally ends there as well." *Langston v. Office of Pers. Mgmt.*, 395 F.3d 1349, 1351 (Fed. Cir. 2005).

The computation of a FERS disability annuity is governed by 5 U.S.C. § 8452. Relevant to this appeal, § 8452 requires OPM to reduce a FERS disability annuity "*[f]or any month in which an annuitant is entitled* both to an annuity under this subchapter as computed under paragraph (1) and *to a disability insurance benefit under section 223 of the Social Security Act.*" 5 U.S.C.

§ 8452(a)(2)(A) (emphases added). The amount of the reduction is equal to a certain percentage (either 100% or 60%, depending on the timing) of "the annuitant's assumed disability benefit," which is defined as "the amount of the disability insurance benefit to which the annuitant is entitled under section 223 of the Social Security Act." *Id.* § 8452(a)(2)(B)(i).

Section 223 of the Social Security Act, which is codified at 42 U.S.C. § 423, provides that an individual who is under a disability as defined in subsection (d)[1] and meets certain other criteria:

> *shall be entitled to a disability insurance benefit* (i) for each month beginning with the first month after his waiting period . . . in which he becomes so entitled to such insurance benefits, or (ii) for each month beginning with the first month during all of which he is under a disability and in which he becomes so entitled to such insurance benefits, but only if he was entitled to disability insurance benefits which terminated, or had a period of disability . . . which ceased, within the 60-month period preceding the first month in which he is under such disability, and *ending with the month preceding* whichever of the following months is the earliest: the month in which he dies, the month in which he attains retirement age . . . , or, *subject to subsection (e) of this section, the termination month.* For purposes of the preceding sen-

---

[1] Subsection (d) defines "disability" to mean the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

tence, *the termination month for any individual shall be* the third month following the month in which his disability ceases; except that, in the case of an individual who has a period of trial work which ends as determined by application of section 422(c)(4)(A) of this title, the termination month shall be the earlier of (I) the third month following the earliest month after the end of such period of trial work with respect to which such individual is determined to no longer be suffering from a disabling physical or mental impairment, or (II) the third month following the earliest month in which such individual engages or is determined able to engage in substantial gainful activity, but *in no event earlier than the first month occurring after the 36 months following such period of trial work in which he engages or is determined able to engage in substantial gainful activity. No payment under this paragraph may be made to an individual who would not meet the definition of disability in subsection (d) of this section* except for paragraph (1)(B) [an exception for blindness] thereof *for any month in which he engages in substantial gainful activity . . . .*

42 U.S.C. § 423(a)(1) (emphases added). Subsection (e), referred to above in connection with the "termination month," is titled "[e]ngaging in substantial gainful activity," and provides that "[n]o benefit shall be payable . . . under subsection (a)(1) of this section to an individual for any month, after the third month, in which he engages in substantial gainful activity during the 36-month period following the end of his trial work period." *Id.* § 423(e). Thus, section 223 creates a statutory scheme that governs when an individual becomes "entitled" to SSA disability benefits, when the individual's entitlement to such bene-

fits ends, and when an individual can receive benefits during the 36-month period following a recipient's trial work period.

There is no dispute that from July 2005 through August 2009, Mr. Stephenson was entitled to SSA disability benefits under section 223 of the Social Security Act. The parties also agree that Mr. Stephenson is not entitled to SSA disability benefits after the completion of his 36-month period of eligibility ending in May 2012. Finally, the parties do not dispute that Mr. Stephenson could have received SSA disability benefits during the period from September 2009 through May 2012, which SSA called his "extended period of eligibility," for any month in which he was unable to engage in "substantial gainful activity." The only dispute is whether Mr. Stephenson was "entitled" to SSA disability benefits during his extended period of eligibility for any month in which he did not receive SSA disability benefits because he was working. According to OPM, he continued to be "entitled" to SSA benefits even for those months in which he could not receive them. Thus, an offset in his FERS annuity for his SSA benefits was appropriate. Mr. Stephenson argues on appeal that under the plain language of section 223, he was not "entitled" to SSA disability benefits during the period in question. No offset thus should have been made for SSA benefits he did not receive. We agree with Mr. Stephenson.

We begin with the meaning of the word "entitled." SSA's implementing regulations define "entitled" to mean "that a person has applied and has proven his or her right to benefits for a period of time." 20 C.F.R. § 404.303. OPM's brief also cites dictionary definitions of the verb "entitle," such as "'to furnish with proper grounds for seeking or claiming something.'" Resp't's Br. 12 (quoting *Entitle Definition*, MERRIAM-WEBSTER,

http://www.merriam-webster.com/dictionary/entitle (last visited Aug. 21, 2012)).[2]

By its express terms, section 223 of the Social Security Act prohibited SSA from paying Mr. Stephenson SSA disability benefits for any month during the period at issue—between September 2009 and May 2012—in which he performed "substantial gainful activity," even though he had previously applied for, and been granted, SSA disability benefits. If Mr. Stephenson had requested benefits for any such month, SSA would have been required to deny his request. In other words, during the period in question, he had no "right to benefits" or "proper grounds for seeking or claiming" benefits. Thus, under either SSA's definition or the dictionary definition cited by OPM, Mr. Stephenson was not "entitled" to SSA disability benefits under section 223 for any month in which he performed substantial gainful activity.

OPM argues that its position is supported by the text of section 223 of the Social Security Act because the statute provides that the entitlement to benefits "end[s] with the month preceding . . . , subject to subsection (e) [concerning an individual who engages in substantial gainful activity], the termination month," where the "termination month" can be "in no event earlier than the first month occurring after the 36 months following such period of trial work in which he engages or is determined able to engage in substantial gainful activity." OPM notes that subsection (e) provides only that "[n]o benefit shall be payable," and is silent as to the termination of entitle-

---

[2] OPM also quotes the definition "to give a title to." Webster's indicates, however, that this definition of "entitle" is more akin to "designate," and it provides the example "He *entitled* his book 'My Life on Mars.'" This definition is not relevant to the use of the word "entitle" in the statutes at issue here.

ment. According to OPM, "[p]ut together, these provisions demonstrate that *Mr. Stephenson remained entitled to SSA benefits at least until 36 months after his trial work period was completed, which was in May 2012*." Resp't's Br. 15.

It is true that Mr. Stephenson's "termination month" was May 2012, and that until then, Mr. Stephenson could have received SSA disability benefits for any month in which he did not work. OPM's argument, however, glosses over the language in subsection (a)(1), which makes the entitlement to SSA disability benefits during the period leading up to the "termination month" explicitly "subject to subsection (e)." 42 U.S.C. § 423(a)(1). By making Mr. Stephenson's entitlement "subject to subsection (e)," subsection (a)(1) conditions his entitlement on whether he "engages in substantial gainful activity." Accordingly, the plain language of section 223 is clear: during the 36-month period following his trial work period, Mr. Stephenson was not "entitled" to SSA disability benefits during months in which he worked.

Having found that the plain language of section 223 of the Social Security Act and SSA's definition of "entitled" favor Mr. Stephenson, we turn to OPM's remaining arguments in support of the Board's decision. OPM cites an SSA regulation that provides an example of calculating the "termination month" for a person engaging in substantial gainful activity, and which makes clear that "the termination month cannot occur before the first month after the end of the 36-month reentitlement period." 20 C.F.R. § 404.325. OPM also cites an SSA regulation titled "[t]he reentitlement period," which provides that SSA will resume paying disability benefits "during the reentitlement period," without requiring the recipient to file a new application, "if after the month for which we found that your disability ceased because you performed substantial

gainful activity, you stopped engaging in substantial gainful activity." 20 C.F.R. § 404.1592a(a). These regulations, however, simply demonstrate that a person who stops working during the 36-month period following the end of the trial work period can regain entitlement to SSA disability benefits, as implied by the term "*reentitlement period.*"

OPM also argues that decisions of this court and the Board make clear that an individual can be "entitled" to SSA disability benefits without actually receiving payment during the period in question. OPM cites *Leighton v. Office of Personnel Management* in which this court addressed "the meaning of the word 'entitled' as used in section 223." 529 F.3d 1071, 1074 (Fed. Cir. 2008). In *Leighton,* the petitioner was receiving a FERS disability annuity under § 8452, SSA disability benefits under section 223 of the Social Security Act, and an Office of Workers Compensation Programs ("OWCP") schedule award. Under section 223, the petitioner was entitled to $1,855 per month. However, section 224 of the Social Security Act[3] requires that SSA payments be offset by an OWCP schedule award. As a result, the petitioner's actual SSA payments were reduced to $175 per month. OPM nevertheless used the full $1,855 when calculating the reduction of his FERS annuity. We affirmed OPM's use of the higher amount, noting that § 8452 "refers to SSA payments as computed under section 223 of the Social Security Act, not under section 224," and finding that "OPM, therefore, reasonably calculated the amount to be deducted from Leighton's FERS disability annuity based upon section 223, without considering the deductions required under section 224." *Id.*

---

[3]    Section 224 of the Social Security Act is codified at 42 U.S.C. § 424a.

OPM argues that "*Leighton* affirms that section 8452's use of the word 'entitled' can encompass individuals who are not actually paid for the benefits to which they are entitled." Resp't's Br. 20. OPM, however, reads *Leighton* too broadly. *Leighton* instructs that when OPM is calculating the amount to deduct from an individual's FERS annuity payments, it should look only to the amount of SSA disability benefits as computed under section 223, regardless of whether those benefits are reduced by operation of another statute. Here, in contrast, for months in which Mr. Stephenson worked, his SSA disability benefits as computed under section 223 were $0. Under *Leighton*, this is the amount OPM should have used when determining whether to continue to offset his FERS annuity.[4]

OPM also cites the Board's decision in *Cohron*, which the Board relied on in its final decision in this case. As OPM correctly notes, other than *Cohron* being an overpayment case, it is "on all fours with this case." Resp't's Br. 23. However, we are not bound by *Cohron* and do not

---

[4] In discussing *Leighton*, OPM also repeats the Board's concern that ruling in favor of Mr. Stephenson would result in a "windfall" because he would receive a full FERS annuity plus the income he earns from working. Resp't's Br. 21-22. But that is exactly what Mr. Stephenson would have received if his application for SSA disability benefits had been denied from the outset. Similarly, he will receive both the full FERS annuity plus his earned income after the conclusion of his 36-month extended period of eligibility if he continues to work. To the extent this could be characterized as a "windfall," it is a result of the different requirements for receiving FERS and SSA disability benefits.

We also note that OPM conceded during oral argument that it is not pressing the Board's concern with administrative hardship as an independent reason to affirm the Board's decision.

find it persuasive for the same reasons we reject Board's decision in this case.

Finally, OPM argues that under the standard set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), and later reaffirmed by *United States v. Mead Corp.*, 533 U.S. 218 (2001), this court should defer to OPM's and SSA's interpretations that Mr. Stephenson remained entitled to SSA disability benefits. The *Skidmore* standard "requires courts to give some deference to informal agency interpretations of ambiguous statutory dictates, with the degree of deference depending on the circumstances." *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1365 (Fed. Cir. 2005). As the Court explained in *Mead*, "[t]he fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *Mead*, 533 U.S. at 228.

As an initial matter, we disagree with OPM's initial premise that SSA has found that Mr. Stephenson remained entitled to SSA disability benefits. In fact, SSA explicitly told Mr. Stephenson in its August 7, 2009 letter that he was "not entitled" to SSA disability benefits during the period at issue:

> We have decided that your disability has ended and that you are *not entitled* to Social Security disability payments beginning September 2009.
>
> . . . .
>
> You are *not entitled* to payments beginning September 2009 because you were doing substantial work.
>
> . . . .

> You get an *extended period of eligibility* that be-
> gins right after the trial work period. This is a 36-
> month period when we restart payments for any
> month(s) your work is not substantial if your
> health problems still meet our rules. Your *extend-
> ed period of eligibility* months are June 2009
> through May 2012.

Resp't's Supplemental App. 3 (emphases added). Nor do
the SSA regulations cited by OPM in its brief indicate
otherwise. Rather, they merely indicate that Mr. Ste-
phenson could have regained entitlement to SSA disabil-
ity benefits during his 36-month extended period of
eligibility or reentitlement period if he had stopped work-
ing.

In addition, we disagree that OPM's interpretation
should be accorded *Skidmore* deference. First, as dis-
cussed earlier, the statutory dictates of 5 U.S.C. § 8452
and section 223 of the Social Security Act are clear. Thus,
there is no reason to defer to agency interpretations. *See
Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837, 842-43 (1984) ("If the intent of Congress is
clear, that is the end of the matter; for the court, as well
as the agency, must give effect to the unambiguously
expressed intent of Congress."). Second, *Skidmore* defer-
ence applies to "an agency administering its own statute."
*Mead*, 533 U.S. at 228. Here, the dispositive issue of
statutory interpretation involves the Social Security Act,
which is administered by SSA, not OPM. Finally, even if
*Skidmore* applied, we conclude that OPM's position is
unreasonable and unpersuasive and therefore not entitled
to deference.

In sum, we hold that for those months during the 36-
month period following the end of Mr. Stephenson's trial
work period in which he did not receive SSA disability

benefits because he performed substantial gainful activity, he was not "entitled" to SSA disability benefits under section 223 of the Social Security Act. Accordingly, OPM erred in denying Mr. Stephenson's request to recalculate his FERS disability retirement annuity to account for the cessation of his monthly SSA disability benefits.

CONCLUSION

We reverse the Board's decision and remand the case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**