**Louis L. MILLER, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

**No. 81–3571.**

United States Court of Appeals, Sixth Circuit.

Jan. 5, 1983.

Alan N. Gagleard, Gagleard, Munro, Addis & Gagleard, Troy, Mich., for petitioner.

Evangeline Swift, Gen. Counsel, Merit Systems Protection Bd., Washington, D.C., Leonard R. Gilman, U.S. Atty., John A. Obee, Detroit, Mich., Ellen G. Ritteman, Asst. U.S. Atty., Detroit, Mich., for respondent.

Before KENNEDY and MARTIN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PER CURIAM.

Louis L. Miller, Jr. seeks review of a Merit Systems Protection Board order upholding his dismissal from the United States Postal Service. Prior to his removal, Miller occupied the upper level management position of Sectional Center Director of Employer and Labor Relations in Detroit, Michigan.

Miller's dismissal was the product of an administrative determination that he had violated three standards of ethical conduct set out in the Employee and Labor Relations manual. Those standards are: # 616.414, which prohibits the use of information gained through Postal Service employment for personal financial gain; # 661.42(a) and (h), which forbid participation in any enterprise which might create a conflict of interest with postal employment or in which postal employment might offer a competitive advantage; and # 661.52, which governs the unofficial use of Post Office property or services.

The charges against Miller stemmed from his association with Gretin Distribution, Inc., a corporation formed by Miller and two co-workers to establish food stamp outlets under contract with the state of Michigan. Prior to the autumn of 1979, Postal Service offices were the primary food

stamp distributors in the Detroit area. In June, 1979, however, the Postal Service put Wayne County on notice that local government would have to assume a greater share of the responsibility for food stamp distribution. Post Office and Wayne County officials met in June and July, 1979, to discuss the changes to be effected. At these meetings, which Bruce Martin, Miller's fellow Post Office employee attended, there was considerable discussion concerning the specific areas in which the Postal Service desired distribution assistance.

Sometime during the summer of 1979, Miller, Martin, and Orville Greve, a third Post Office employee, decided to form Gretin, Inc., a corporation designed to set up and manage food stamp distribution centers in key areas of Wayne County. On August 16, 1979, Gretin presented the County with a contract proposal whereby the corporation would receive $1.10 for each food stamp transaction it handled. The likelihood of the proposal's acceptance was, of course, greatly enhanced by the fact that Gretin's organizers knew precisely what the Post Office and county government wanted and had tailored their proposal to these specific needs.

The three charges of unethical conduct were lodged against Miller on November 6, 1979. After a hearing conducted in March, 1980, the charges were sustained and Miller was terminated. The Merit Board upheld this administrative decision, finding that Miller's dismissal "promoted the efficiency of the service" under 5 U.S.C. § 7513(a).

On appeal, Miller contends: (1) that the Gretin proposal was based, not on "inside information," but on information which was available to the general public; (2) that no conflict of interest occurred as a result of his dual role as a Post Office employee and Gretin stockholder; and (3) that his unauthorized use of Postal Service personnel was limited to off-duty hours.

■ Our standard of review in cases of this nature is a narrow one; we can set aside an agency action only if that action is: "(arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). *Sexton v. Kennedy,* 523 F.2d 1311, 1314 (6th Cir.1975) and cases cited therein. We have reviewed the record below with care and conclude that Miller's dismissal was a proper exercise of administrative authority.

■ The evidence on each of the three charges is in conflict; however, the evidence against Miller is, in each instance, "substantial." With respect to the first charge, for example, there was testimony by an employee of the Wayne County Department of Social Services that the information conveyed to participants in the June and July meetings was not made public until August 16, 1979, the very day Gretin submitted its proposal. If we credit this testimony, as the hearing officer apparently did, the inference that Gretin's organizers availed themselves of "inside information" is unavoidable.

The evidence on the second charge was somewhat less incriminating. We cannot find that Miller's dual role created an *actual* conflict of interest. It is arguable, however, that Miller's acceptance of compensation from Gretin gave the *appearance* of such a conflict, a result specifically prohibited by ethical standard # 661.42(a). Furthermore, as William Schweitzer, the Michigan District Director of Employer and Labor Relations, testified, Miller's continued employment with the Postal Service could have afforded him access to information which was unavailable to Gretin's competitors, thereby conferring on Gretin a forbidden competitive advantage.

Finally, it is apparent from the record that Miller utilized the services of a Post Office secretary to type personal documents. According to the hearing officer, a "preponderance" of the evidence indicated that some of this unofficial work was performed while the secretary was supposed to be on duty. This determination was supported by substantial evidence and will not be disturbed on appeal.

At first glance, discharge from the Postal Service might appear to be a harsh penalty for Miller's particular course of conduct. However, an observation by the Court of Claims in *Brewer v. United States Postal Service,* 277 Ct.Cl. 276, 647 F.2d 1093, 1098 (Ct.Cl.1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982) is equally germane to Miller's case:

> The Postal Service had a right to expect that he would set an example for other employees by obeying the regulations set forth in the Postal Manual. The Postal Service also had a right to expect from him a higher standard of conduct than from a lower level employee and to take into account the reaction of other employees regarding any misconduct by him.

The judgment below is affirmed.