Lois DELONG, Petitioner,

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES,**
Respondent.

No. 00–3449.

United States Court of Appeals,
Federal Circuit.

Sept. 5, 2001.

John Fredericks III, Fredericks, Pelcyger & Hester, LLC, of Louisville, CO, argued for petitioner.

Eric J. Nestor, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and Harold D. Lester, Jr., Assistant Director.

Before MAYER, Chief Judge, RADER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Lois Delong petitions for review of the final decision of the Merit Systems Protection Board ("Board") that sustained her removal from her position with the Department of Health and Human Services ("HHS" or "agency") pursuant to 25 U.S.C. § 3207 (1994). *DeLong v. Dep't of Health & Human Servs.*, 86 M.S.P.R. 501 (M.S.P.B. 2000) (*"DeLong"*). We affirm.

## BACKGROUND

### I.

Ms. Delong was employed as a Substance Abuse Specialist at the Acoma Canoncito Laguna Service Unit of the Indian Health Service of HHS in San Fidel, New Mexico. The Indian Health Service provides health care services, including rehabilitative services, to American Indians and Alaska Native Indians. The Acoma Canoncito Laguna Service Unit serves Indians in the Albuquerque, New Mexico area. Ms. Delong's position involved

working with adolescents who were receiving treatment for chemical dependency, and she had regular and unsupervised contact with children.

On April 19, 1999, HHS issued a notice of proposed action to remove Ms. Delong from her position. The proposed removal was not based on any alleged misconduct or poor performance, but was initiated pursuant to the Indian Child Protection and Family Violence Prevention Act of 1990, codified at 25 U.S.C. §§ 3201–11 (1994) (the "Act").[1] Section 3207 of the Act sets minimum standards of character for federal employees whose positions involve regular contact with Indian children. HHS interpreted § 3207 as requiring it to remove Ms. Delong from her position because she had been arrested in 1974, when she was in college, on assault and battery charges and had pled guilty and been sentenced on those charges. In response to the proposed removal, Ms. Delong submitted a letter from her legal representative and several letters of character reference. Despite the evidence that Ms. Delong's job performance had been acceptable, HHS determined that she was not eligible for continued employment by operation of § 3207.[2] HHS therefore removed her from her position effective June 4, 1999.

## II.

Ms. Delong appealed her removal to the Board. In an initial decision, the Administrative Judge ("AJ") to whom the case was assigned reversed HHS's action. *Delong v. Dep't of Health & Human Servs.*, No. DE–0752–99–0299–I–1 (Merit Sys. Prot.

Bd. Dec. 13, 1999) ("Initial Decision"). The AJ noted that Ms. Delong did not dispute that her position was covered by the Act or that her assault and battery conviction violated the minimum standards of character set forth in the Act. *Id.*, slip op. at 4. However, the AJ declined to interpret the Act as requiring HHS to remove current employees who have been convicted of enumerated crimes. Instead, the AJ read the statute as permitting HHS to "consider[ ] extenuating and mitigating circumstances in weighing the appropriateness of a disciplinary penalty" against a current employee, even though the statute "clearly bars new appointments ... of individuals who have a criminal record that includes an enumerated offense." *Id.* Because HHS had not considered Ms. Delong's actual suitability for work with Indian children, the AJ determined that her removal should not be sustained. *Id.* at 5.

The AJ also determined that HHS had failed to demonstrate that Ms. Delong's removal "promoted the efficiency of the service," as required by 5 U.S.C. § 7513(a) (1994). Specifically, the AJ determined that the nature of Ms. Delong's crime, the fact that it occurred twenty-five years ago and stemmed from a campus fight between Indians and non-Indians, the evidence of Ms. Delong's rehabilitation, and her ten years of service without incident demonstrated that she did not pose a threat to Indian children. *Id.* at 6–7. The AJ therefore concluded that Ms. Delong's removal would not further the Act's purpose of protecting Indian children from abuse.

---

1. The Act was amended on December 27, 2000. Omnibus Indian Advancement Act of 2000, Pub.L. 106–568, 114 Stat. 2918; 25 U.S.C.A. § 3207 (West 2001). All references to the Act in this opinion are to the 1994 version of the law, which was in effect during the period relevant to this case.

2. Prior to proposing her removal, HHS attempted to find another position for Ms. Delong at the Acoma Canoncito Laguna Service Unit; however, it determined that all positions at the Service Unit were covered by the Act.

*Id.* at 7. Accordingly, the AJ reversed HHS's removal of Ms. Delong.

HHS petitioned the full Board for review of the Initial Decision. The Board disagreed with the AJ's interpretation of the Act and reversed the Initial Decision. *Delong,* slip op. at 2. The Board rejected the distinction drawn in the Initial Decision between current and prospective employees, and interpreted the statute as applying with equal force to individuals who are employed in a position covered by § 3207(a) and individuals who are being considered for employment in such a position. *Id.* at 7. The Board also determined that the statute does not permit HHS to retain a current employee who has been found to violate the minimum standards of character set forth in § 3207(b). *Id.* at 8. The Board stated that its construction of the statute was consistent with the Congressional findings set forth in 25 U.S.C. § 3201, including the findings that "multiple incidents of sexual abuse of Indian children had been perpetrated by Federal employees" and that "Federal background investigations of Federal employees who care for Indian children had been deficient." *Id.* at 9 (citing 25 U.S.C. § 3201(a)(1)(C), (D)). Because there was no question that Ms. Delong was employed in a position covered by § 3207(a) or that she had been convicted of a crime enumerated in § 3207(b), the Board concluded that HHS was required by § 3207 to remove her from her position.

The Board also determined that Ms. Delong's removal promoted the efficiency of the service, as required by 5 U.S.C. § 7513(a). *Id.* at 10. The Board reasoned that § 3207 creates a presumption of nexus between an employee's violation of the Act's minimum standards of character and the employee's continued service in a position covered by the Act. *Id.* Thus, the Board determined that the statute itself creates " 'the necessary connection between the employee's off-duty misconduct and the employee's job-related responsibilities.' " *Id.* (quoting *White v. U.S. Postal Serv.,* 768 F.2d 334, 335–36 (Fed.Cir. 1985)).

The Board also rejected Ms. Delong's arguments that the penalty of removal was unreasonable and should be mitigated. *Id.* at 11. The Board reiterated its determination that § 3207 "prohibits individuals from holding an appointment to a covered position if they have been found guilty of ... a covered crime." *Id.* The Board also noted that HHS had shown that there were no other positions to which Ms. Delong could have been reassigned. *Id.* The Board therefore determined that HHS was justified in removing Ms. Delong. *Id.* Accordingly, it sustained the removal action. *Id.*

Ms. Delong petitions for review of the Board decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (1994).

## DISCUSSION

### I.

■■■ Our scope of review in an appeal from a decision of the Board is limited. We must affirm the decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994). Ms. Delong challenges the Board's interpretation of § 3207. Her challenge raises a question of law, which we review *de novo. See Nebblett v. Office of Pers. Mgmt.,* 237 F.3d 1353, 1356 (Fed.Cir.2001).

Ms. Delong argues that the Board's interpretation of § 3207 is unconstitutional because it denies her the due process protections guaranteed by the Fifth Amend-

ment to the United States Constitution. Specifically, she contends that the Board's interpretation violates her substantive due process rights by creating an impermissible irrebuttable presumption that she is unfit for continued employment because of her past conviction. Ms. Delong argues that the Board erred in interpreting § 3207 as applying to current employees whose criminal conduct occurred prior to the effective date of the Act because the statute does not contain clear language demonstrating that Congress intended the Act to have retroactive effect. She also argues that the statute should be interpreted as requiring HHS to conduct an individualized hearing to consider mitigating circumstances when a current employee is found to violate the minimum standards of character in the Act.

In response, HHS argues that the Board's interpretation of § 3207 accords with the plain language of the Act. HHS asserts that the statute itself requires it to investigate the character of current employees and to ensure that all employees in covered positions meet the minimum standards of character. With respect to Ms. Delong's substantive due process argument, HHS argues that the Act's minimum standards of character bear a rational relationship to a legitimate government purpose-protecting Indian children from abuse by federal employees. Therefore, HHS contends, the Act does not violate Ms. Delong's substantive due process rights.

For the reasons set forth below, we agree with HHS that the plain language of § 3207 requires that the agency apply the Act's minimum standards of character to current employees and that the agency remove from positions covered by the Act any employees who fail to meet those standards. We also agree with HHS that this interpretation of § 3207 does not render the Act unconstitutional under the Due Process Clause of the Fifth Amendment.

## II.

■■ When determining the meaning of a statute, we look first to the language of the statute itself. *Van Wersch v. Dept. of Health & Human Servs.*, 197 F.3d 1144, 1148 (Fed.Cir.1999). "If the language is clear, the plain meaning of the statute will be regarded as conclusive." *Id.*

■ Section 3207, as in effect at the time of Ms. Delong's removal, provided in relevant part as follows:

§ 3207. Character Investigations

(a) By Secretary of the Interior and the Secretary of Health and Human Services

The Secretary [of the Interior] and the Secretary of Health and Human Services shall-

(1) compile a list of all authorized positions within their respective departments the duties and responsibilities of which involve regular contact with, or control over, Indian children,

(2) conduct an investigation of the character of each individual who *is employed*, or is being considered for employment, by the respective Secretary in a position listed pursuant to paragraph (1), and

(3) prescribe by regulations minimum standards of character that each of *such individuals* must meet to be appointed to such positions.

(b) Criminal records

The minimum standards of character that are to be prescribed under this section *shall ensure* that none of the individuals appointed to positions described in subsection (a) of this section have been found guilty of, or entered a plea of nolo contendere or guilty to, any offense under Federal, State, or tribal

law involving crimes of violence; sexual assault, molestation, exploitation, contact or prostitution; or crimes against persons.

25 U.S.C. § 3207 (emphases added). The plain language of the statute demonstrates that it applies to current employees. Section 3207(a)(2) requires HHS to "conduct an investigation of each individual who is employed . . . in a [covered] position." *Id.* Section 3207(a)(3) requires HHS to "prescribe by regulations minimum standards of character that each of such individuals must meet to be appointed to such positions," and § 3207(b) requires the minimum standards to "ensure that none of the individuals appointed to [covered] positions . . . have been found guilty of, or entered a plea of nolo contendere or guilty to, any [enumerated crime]." *Id.*

Ms. Delong argues that the "to be appointed to" language of § 3207(a)(3) and § 3207(b) indicates that the minimum standards of character apply to prospective employees only. However, current employees also may be considered to "be appointed" to their positions. Moreover, the term "such individuals" in § 3207(a)(3) refers back to the phrase "each individual who is employed, or is being considered for employment" in preceding subsection § 3207(a)(2).

■ The plain language of § 3207 also makes it clear that enumerated crimes committed prior to its enactment violate the minimum standards of character. Section 3207(a) requires the agency to investigate the character of current employees. Such investigation would not be necessary if an employee's past conduct were irrelevant to whether that employee meets the minimum standards of character required by the Act. Moreover, § 3207(b) requires the agency to "ensure that none of the individuals appointed to [covered] positions . . . *have been found guilty of* . . . [an

enumerated crime]." (emphasis added). This language clearly requires HHS to consider crimes committed prior to enactment of the Act when determining whether an employee satisfies the minimum standards of character.

■ Our interpretation of § 3207 is reinforced by the findings and purposes behind the Act, which are set forth in § 3201. As noted by the Board, one of the findings behind the Act recognized that "multiple incidents of sexual abuse of children on Indian reservations have been . . . perpetrated by persons employed . . . by the Federal government." 25 U.S.C. § 3201(a)(1)(C) (1990). That finding reflects Congress's concern that current federal employees may pose a threat to Indian children. Another finding recognized that "investigations of the background of Federal employees who care for . . . Indian children are often deficient." *Id.* § 3201(a)(1)(D). That finding suggests that Congress also was concerned that some current federal employees might not be fit for employment in positions covered by the Act due to their past criminal conduct. Interpreting § 3207 as applying to current employees and as requiring the consideration of past criminal conduct also furthers one of the "major goals" of the Act, "reduc[ing the] incidents . . . of abuse of children . . . in Indian country," *Id.* § 3201(a)(2).

■ Ms. Delong argues that § 3207 does not require HHS to remove current employees who fail to meet the minimum standards of character, but instead permits HHS to consider mitigating circumstances that might establish the employee's fitness for continued employment in a covered position, notwithstanding the employee's criminal record. We are unable to discern any language in § 3207 that supports Ms. Delong's construction of the statute. Sec-

tion 3207(b) requires HHS to "ensure that none of the individuals appointed to [covered] positions ... have been found guilty of ... [an enumerated crime]." The only way HHS can "ensure" that current employees meet the minimum standards of character is to remove employees who fail to meet the standards.

### III.

Interpreting § 3207 as requiring HHS to remove current employees who violate the Act's minimum standards of character does not render the statute unconstitutional under the Due Process Clause of the Fifth Amendment. A federal employee, as defined in 5 U.S.C. § 7501 (1994), "has a property right in [her] continued employment." *King v. Alston,* 75 F.3d 657, 661 (Fed.Cir.1996). That property right entitles the employee to procedural due process protections under the Fifth Amendment. *King v. Erickson,* 89 F.3d 1575, 1581 (Fed.Cir.1996), *rev'd on other grounds sub nom. LaChance v. Erickson,* 522 U.S. 262, 118 S.Ct. 753, 139 L.Ed.2d 695 (1988). "When an agency brings charges against an employee, compliance with [the procedures of 5 U.S.C. § 7513(b) ] satisfies the minimum due process requirements to which the employee is entitled." *Id.* Ms. Delong does not argue that her procedural due process rights were violated, nor could she. HHS provided her with "at least 30 days' advance written notice ... stating the reasons for the proposed action," afforded her "a reasonable time to answer orally and in writing and to furnish affidavits ... in support of the answer," permitted her to be represented by an attorney, and provided her with "a written decision and the specific reasons therefore." 5 U.S.C. § 7513(b). Instead, as noted, Ms. Delong argues that the statute violates her substantive due process rights by creating an irrebuttable presumption that, because of her criminal record, she is unfit for service in a covered position.

In order to evaluate the merits of this argument, we must determine what level of protection the Constitution provides to Ms. Delong's property interest in her federal employment. Ms. Delong asserts that her federal employment is a fundamental right and that, therefore, § 3207 is subject to strict scrutiny review. In response, HHS cites *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), for the proposition that the statute need only be reviewed for a rational basis. Ms. Delong correctly points out that because *Salfi* is a "social welfare classification" case it is not directly on point with her appeal. However, that does not mean that we can ignore the Supreme Court's decision in *Salfi* altogether, particularly where that decision "explain[s] ... at some length" the Court's prior decisions on the constitutionality of irrebuttable presumptions. *Salfi,* 422 U.S. at 768, 95 S.Ct. 2457. *Salfi* indicates that statutes creating conclusive presumptions are judged under the same due process standards as other statutes. *Id.* at 770–72, 95 S.Ct. 2457. Where the statute at issue does not abridge a fundamental right or discriminate against a suspect class, it is upheld if it "bear[s] ... [a] rational relation to a legitimate legislative goal" and is free from invidious discrimination. *Id.* at 772, 95 S.Ct. 2457.

Ms. Delong has not cited, and we could not uncover, any case where the Supreme Court has suggested that federal employment is a fundamental right, the abridgment of which must withstand strict scrutiny under the Due Process Clause. The closest case cited by Ms. Delong is *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), where the Court struck down a

state law that required pregnant public school teachers to take unpaid leave beginning five months before their due dates. The Court reviewed the statute under a more critical lens than the rational basis test, requiring the state to "justify the particular procedures [it had] adopted" and to convince the Court that the chosen procedures "do not needlessly, arbitrarily, or capriciously impinge" on the teachers' rights. *Id.* at 640, 94 S.Ct. 791. The Court did not apply this heightened level of scrutiny because the teachers had a "fundamental" interest in their employment, however, but because "the decision whether to bear . . . a child" was viewed as a "basic constitutional liberty" upon which the statute infringed. *Id.* at 640, 647, 94 S.Ct. 791; *Salfi,* 422 U.S. at 771, 95 S.Ct. 2457 (noting that *LaFleur* concerned the important "freedom of personal choice in matters of marriage and family life"). Because Ms. Delong has not demonstrated that her federal employment is a fundamental right, and has not argued that the statute discriminates against her as a member of a suspect class, we review § 3207 under the rational basis test.

Ms. Delong argues that the statute fails under the rational basis test because it is overly broad. She contends that removing employees who have been rehabilitated since committing their crimes, as she alleges she has been, does not further the legitimate purpose behind the Act of protecting Indian children from abuse. Ms. Delong asserts that, in order to pass muster under the Constitution, the statute must require HHS to conduct a meaningful hearing, based on individual circumstances, on the issue of whether an employee is fit for continued employment in a covered position. We have carefully considered Ms. Delong's arguments, but we cannot agree that the Constitution requires such a hearing in her case.

"The hearing required by the Due Process Clause must be meaningful and appropriate to the nature of the case." *Bell v. Burson,* 402 U.S. 535, 541–42, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (internal quotations and citations omitted). A procedural rule required to satisfy due process in one context may not be required in every case. *Id.* at 540, 91 S.Ct. 1586. For example, in *Bell,* the Supreme Court held that before Georgia could deprive an uninsured motorist involved in an accident of his driver's license and vehicle registration for failing to post security to cover the amount of damages claimed against him, it had to conduct a hearing to determine "whether there is a reasonable possibility" that he might be found at fault or otherwise liable for the damages. *Id.* at 540, 91 S.Ct. 1586. The Court did not reach this conclusion because an irrebuttable presumption that uninsured drivers are at fault would be unconstitutional *per se,* but because other aspects of the statute at issue demonstrated that actual liability "play[ed] a crucial role in the . . . [law]." *Id.* at 541, 91 S.Ct. 1586. For example, Georgia would not suspend the uninsured driver's license if the injured party released him from liability or if there was an adjudication of nonliability. *Id.* Relevant to Ms. Delong's appeal is the Court's statement that if "fault and liability [were] irrelevant to the statutory scheme," a hearing limited to the issues of whether the uninsured driver was involved in the accident, whether he had complied with the statute, and whether he fell under any of the exceptions to the statute "would [have been] appropriate to the nature of the case." *Id.* (internal quotation omitted). Under those circumstances, a hearing on liability would not be required. *Id.* Section 3207 is similar to the "no-fault" scheme distinguished in *Bell* in that it prohibits the employment of any person who fails to satisfy certain minimum standards of character, regardless of

whether the person actually poses a threat to Indian children. *Bell* therefore indicates that the Constitution does not require that Ms. Delong be afforded a hearing on the issue of her fitness for service in a covered position.

In creating the minimum standards of character set forth in § 3207, Congress created a bright line rule that anyone who has been convicted of an enumerated crime may not serve in a covered position. Like all bright line rules, § 3207 is both over-inclusive and under-inclusive, but the imprecision of the statute does not make it unconstitutional. The Supreme Court's analysis of the Social Security statute at issue in *Salfi* is instructive on this point. The statute denied survival benefits to "widows and stepchildren who had their respective relationships to a deceased wage earner for less than nine months prior to his death." *Salfi,* 422 U.S. at 754, 95 S.Ct. 2457. The statute "was intended to prevent the use of sham marriages to secure Social Security payments." *Id.* at 767, 95 S.Ct. 2457. The Court noted that, when a statute does not infringe upon a constitutionally protected status or a fundamental right, the Constitution does not "ban all prophylactic [over-inclusive and under-inclusive] provisions," and does not even require that "the provision filters out a substantial part of the class which caused congressional concern, or [that] it filters out more members of the class than non-members." *Id.* at 777, 95 S.Ct. 2457. Instead, the Court stated, "[t]he question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation ... would protect against its occurrence, and that the expense and other difficulties of individual determination justified the inherent imprecision of a prophylactic rule." *Id.*

Ms. Delong admits that the creation of minimum standards of character for those who have regular contact with Indian children is rationally related to the government's interest in protecting those children from abuse. Congress could rationally have concluded that the minimum standards of character in § 3207 would reduce the incidence of abuse of Indian children at the hands of federal employees. Moreover, given the difficulty of identifying employees who pose a threat to Indian children, the choice of a blanket rule is justified in this case. *Cf. Vlandis v. Kline,* 412 U.S. 441, 452, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (striking a statute that denied students the resident rate for state university tuition and fees by operation of an irrebuttable presumption where the state had "reasonable alternative means of making the crucial [resident or nonresident] determination"); *LaFleur,* 414 U.S. at 646 n. 14, 94 S.Ct. 791 (noting that, instead of imposing an irrebuttable presumption that women are physically unfit to work as teachers after their fifth month of pregnancy, the school boards "could require the pregnant teacher to submit to a medical examination by a school board physician, or simply require each teacher to submit a current certification from her obstetrician as to her ability to continue work"); *but see Stanley v. Illinois,* 405 U.S. 645, 652, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (stating that a father's "interest in retaining custody of his children is cognizable and substantial" and requiring a hearing on the issue of a father's parental fitness before his children can be removed from his custody).

## CONCLUSION

Although § 3207 appears to work an unfortunate result in Ms. Delong's case, requiring her removal on the sole basis of an assault and battery conviction that is

over twenty-five years old, we cannot say that HHS's application of the statute to Ms. Delong violated her due process rights. Therefore, the final decision of the Board sustaining HHS's removal of Ms. Delong from her position as a Substance Abuse Specialist is

*AFFIRMED.*

No costs.