**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2015 MSPB 36**

Docket No. PH-0752-13-0236-I-1

**Paul D. Jonson,**

**Appellant,**

**v.**

**Federal Deposit Insurance Corporation,**

**Agency.**

May 4, 2015

Paul J. Adams, Esquire, Brockton, Massachusetts, for the appellant.

Eric S. Gold, Arlington, Virginia, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1     The Federal Deposit Insurance Corporation (FDIC) has filed a petition for review of the initial decision, which reversed the appellant's removal. For the reasons discussed below, we GRANT the petition for review, VACATE the initial decision, and REMAND the appeal to the regional office for further adjudication in accordance with this Opinion and Order.

BACKGROUND

¶2     FDIC removed the appellant from his position as Case Manager for conduct prohibited by its regulations at 12 C.F.R. Part 336, Subpart B, concerning minimum standards of fitness for employment (the minimum fitness regulations).

*Jonson v. Federal Deposit Insurance Corporation*, 121 M.S.P.R. 56, ¶ 2 (2014) (*Jonson I*). The basis of the removal was the appellant's alleged failure to satisfy eight separate debts to FDIC-insured institutions. *Id.*, ¶ 2; Initial Appeal File (IAF), Tab 4 at 125-26 of 129. The agency found that this conduct violated the prohibition in the minimum fitness regulations against "a pattern or practice of defalcation." *Jonson I*, 121 M.S.P.R. 56, ¶ 2; 12 C.F.R. § 336.5(a)(3). A pattern or practice of defalcation is defined in the regulations, in pertinent part, as "[a] history of financial irresponsibility with regard to debts owed to insured depository institutions which are in default in excess of $50,000 in the aggregate." 12 C.F.R. § 336.3(i)(1). The regulations provide that employees who are not in compliance "shall be terminated." 12 C.F.R. § 336.8(a).

¶3      This is the second time we have considered the appellant's removal. The administrative judge previously certified the following rulings for interlocutory review:

> 1. Pursuant to the Resolution Trust Corporation Completion Act (RTCCA),[1] FDIC was authorized by Congress to promulgate minimum standards for employment, which are set forth in 12 C.F.R. § 336.5;
>
> 2. FDIC was required to obtain concurrence from the Office of Government Ethics (OGE) before enacting 12 C.F.R. Part 336;
>
> 3. FDIC defined the word "defalcation" in 12 C.F.R. Part 336 more broadly than is utilized in the Bankruptcy Code;
>
> 4. FDIC was permitted to utilize a more expansive definition of the word "defalcation";
>
> 5. If FDIC establishes by preponderant evidence that the appellant violated 12 C.F.R. Part 336, such a violation would not necessarily subject him to mandatory removal as prescribed in 12 C.F.R. § 336.8; and

---

[1] At issue is section 19 of the RTCCA, Pub. L. No. 103-204, § 19, 107 Stat. 2369, 2402-04 (1993) (codified as amended at 12 U.S.C. § 1822(f)).

6. The Board has jurisdiction over the appeal of the adverse employment action suffered by the appellant, including a determination regarding the reasonableness of the penalty in light of the criteria and exceptions set forth in 12 C.F.R. Part 336.

*Jonson I*, 121 M.S.P.R. 56, ¶¶ 1, 3.

¶4 Previously, on interlocutory review, we affirmed the administrative judge's rulings regarding issues 1, 2, and 6, reversed the appellant's removal, and returned the appeal to the regional office for further adjudication of his prohibited personnel practices claims.[2] *Id.*, ¶¶ 1, 5, 18-20. The reversal was based on the determination that the removal was "not in accordance with law" because the minimum fitness regulations on which it was based were promulgated without the approval of OGE, as required by section 1822(f)(2) of the RTCCA. *Jonson I*, 121 M.S.P.R. 56, ¶¶ 16-17.

¶5 After the appeal was returned to the administrative judge, the appellant withdrew his prohibited personnel practices claims with prejudice. IAF, Tab 32 at 4. Therefore, the administrative judge issued an initial decision finding these claims moot and adopting the Board's reversal of the appellant's removal. IAF, Tab 34, Initial Decision (ID) at 4-5.

¶6 FDIC has filed a petition for review, arguing that we exceeded the scope of our authority by invalidating the minimum fitness regulations and that our finding that OGE approval was required for the regulations was incorrect. Petition for Review (PFR) File, Tab 1 at 4-5.[3] The appellant has not responded to the petition

---

[2] Member Robbins dissenting.

[3] FDIC has provided a certification of compliance with the interim relief order in the initial decision. PFR File, Tab 1 at 7, 29; *see* ID at 6-7 (ordering interim relief); see also 5 C.F.R. § 1201.116(a) (an agency's petition for review filed in a case where the appellant was the prevailing party and was granted interim relief must be accompanied by a certification of compliance with the interim relief order). The appellant has not challenged the certification, and therefore we decline to review it further here. *Cf. Guillebeau v. Department of the Navy*, 362 F.3d 1329, 1332-34 (Fed. Cir. 2004) (interpreting 5 C.F.R. § 1201.116(e), identified by its previous location at

for review. We disagree with FDIC regarding the first issue. However, in light of an OGE declaration provided by FDIC after we issued *Jonson I*, we now find that OGE concurrence was not required prior to the promulgation of the minimum fitness regulations. *See id*. at 28 (containing the OGE declaration); IAF, Tab 23 at 30 (same). Therefore, we REVERSE our prior ruling regarding issue 2, above. In light of this finding, we now address certified issues 3, 4, and 5, which we previously did not reach. *Jonson I*, 121 M.S.P.R. 56, ¶¶ 1, 5.

## ANALYSIS

### The Board acted within its authority in declining to follow the minimum fitness regulations.

¶7    FDIC argues that we exceeded the scope of our authority when we invalidated its minimum fitness regulations. PFR File, Tab 1 at 8-11. According to FDIC, the Board's authority is limited to review of Office of Personnel Management (OPM) regulations, as provided in 5 U.S.C. § 1204(f). PFR File, Tab 1 at 8-9; *see* IAF, Tab 13 at 7 (making this argument below).[4] We disagree with FDIC that we invalidated its minimum fitness regulations. We also find unpersuasive FDIC's reliance on decisions that address the scope of the Board's original jurisdiction under section 1204(f), because this appeal arises under the Board's appellate jurisdiction.

¶8    In *Jonson I*, we found that the adverse action was taken pursuant to regulations that FDIC promulgated without concurrence from OGE. *Jonson I*, 121 M.S.P.R. 56, ¶¶ 10, 16. Therefore, we found the regulations to be "not in accordance with law." *Id*., ¶ 17 (citing 5 U.S.C. § 7701(c)(2)(C) (providing that

---

section 1201.115(b)(4), as providing that dismissal for failure to comply with interim relief is discretionary).

[4] Because we did not previously address this argument in *Jonson I*, we do so now.

an adverse action may not be sustained if it is "not in accordance with law")). We did not make a finding that the regulations were invalid.[5]

¶9        FDIC argues that our "authority to review regulations is limited to that which is provided by 5 U.S.C. § 1204(f)."  PFR File, Tab 1 at 8-11 (citing *Latham v. U.S. Postal Service*, 117 M.S.P.R. 400 (2012); *Thompson v. Office of Personnel Management*, 87 M.S.P.R. 184 (2000); *Ramsey v. Office of Personnel Management*, 87 M.S.P.R. 98 (2000)).  The Board has two types of jurisdiction, original and appellate.  5 C.F.R. § 1201.1.  The Board's original jurisdiction includes, in pertinent part, review of rules and regulations issued by OPM to declare such provisions invalid on their face or invalidly implemented by any agency.  5 U.S.C. § 1204(a)(4), (f)(2); *Thompson*, 87 M.S.P.R. 184, ¶ 7; 5 C.F.R. § 1203.1.  In *Thompson*, the Board found that its original jurisdiction does not include the authority to determine whether OPM followed the proper procedures in issuing its regulations.  87 M.S.P.R. 184, ¶ 8 (citing 5 U.S.C. § 1204).  In contrast, in the instant appeal, our authority arises from our appellate jurisdiction under chapter 75 of Title 5.  5 U.S.C. § 7512(1) (including removals among adverse actions appealable to the Board); *Samble v. Department of Defense*, 98 M.S.P.R. 502, ¶ 11 (2005) (finding that the involuntary separation of an appellant who met the statutory definition of employee with adverse action appeal rights fell within the Board's appellate jurisdiction); 5 C.F.R. § 1201.3(a)(1) (listing adverse actions as falling within the Board's appellate jurisdiction).  We find unpersuasive FDIC's citation to *Thompson* to suggest that

---

[5] Although we stated in *Jonson I* that the minimum fitness regulations were "invalidly promulgated," we did not intend to infer by that statement that we were invalidating the regulations. *Jonson I*, 121 M.S.P.R. 56, ¶ 17.

we cannot review whether an agency other than OPM properly promulgated regulations in determining whether to sustain an adverse action.[6]

¶10　　We also are not persuaded by FDIC's arguments that the Board lacks authority to invalidate regulations under the Administrative Procedures Act (APA). PFR File, Tab 1 at 9-11 & n.3 (citing *Latham*, 117 M.S.P.R. 400, ¶¶ 18-19 (holding that the Board does not have jurisdiction under the APA to review OPM regulations to determine whether they exceed the statutory grant of authority, but going on to discuss the Board's authority to address whether a regulation improperly expands Board jurisdiction because the Board's jurisdiction is always before it)); *see* 5 U.S.C. § 706(2)(C) (granting reviewing courts the authority under the APA to "hold unlawful and set aside agency action . . . in excess of statutory . . . authority"). We did not review the minimum fitness regulations under the APA and did not invalidate them in any event. Rather, we declined to follow them as they concerned this adverse action appeal. *Jonson I*, 121 M.S.P.R. 56, ¶¶ 9, 17.

FDIC was not required to obtain concurrence from OGE for its minimum fitness regulations.

¶11　　After we issued *Jonson I*, FDIC submitted a declaration from OGE stating that FDIC was not required to obtain concurrence from OGE prior to promulgating the minimum fitness regulations.[7] PFR File, Tab 1 at 7, 28. As a

---

[6] We are likewise unpersuaded by the agency's citation to *Ramsey*. PFR File, Tab 1 at 9 (citing *Ramsey*, 87 M.S.P.R. 98, ¶ 10 (finding that a challenge to an OPM regulation that merely repeated statutory language failed because the Board does not have authority under section 1204(f) to review a statutory provision)).

[7] The agency submitted this declaration for the first time below as part of a motion for reconsideration, which it titled a request to reopen. IAF, Tab 23 at 6, 30. The Clerk of the Board denied the motion because reconsideration of interlocutory decisions is not contemplated by the Board's regulations. *See* 5 C.F.R. §§ 1201.91-.93 (containing the Board's regulations on interlocutory appeals).

matter of comity to OGE, we now find that its concurrence was not required for the minimum fitness regulations and overrule our contrary holding in *Jonson I*.[8]

¶12    OGE "provide[s], in consultation with [OPM], overall direction" on the prevention of conflicts of interest by executive agency employees.  5 U.S.C. app. § 402(a); 5 C.F.R. § 2600.101(a).  Executive agencies in this context include FDIC.  *See* 5 U.S.C. § 105 (defining executive agency to include government corporations); 5 U.S.C. app. § 402(a) (incorporating the definition of executive agency from 5 U.S.C. § 105); 12 U.S.C. §§ 1811-12 (establishing FDIC and its general structure as a government corporation), 1822(f)(1)(A) (stating that FDIC is an agency for purposes of Title 18); 31 U.S.C. § 9101(2)(B) (reflecting that FDIC is a "mixed-ownership Government corporation"); Supplemental Standards of Ethical Conduct for FDIC Employees, 72 Fed. Reg. 19,375, 19,376 (Apr. 18, 2007) (reflecting that FDIC obtained OGE concurrence for changes to its ethics regulations codified at 5 C.F.R. Part 3201).  OGE has broad oversight of executive branch ethics, including developing rules and regulations on conflicts

---

[8] Under the law of the case doctrine, a tribunal generally will not reconsider issues that already have been decided in an appeal, unless there is new and material evidence adduced at a subsequent trial, controlling authority has made a contrary decision of law, or the prior decision was clearly erroneous and would work a manifest injustice. *O'Connell v. Department of Navy*, 73 M.S.P.R. 235, 240 (1997).  The doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, [and is] not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912); *see Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1582-83 (Fed. Cir. 1994) (observing that a court's decision to apply the law of the case doctrine is within its discretion).  Although FDIC had previously provided a letter from OGE that opined that "FDIC complied with the requirements of OGE's regulatory process leading up to its publication" of the minimum fitness regulations, the letter provided no insight into what compliance was required or how FDIC complied.  IAF, Tab 10 at 18; *see Jonson I*, 121 M.S.P.R. 56, ¶ 10 (referring to this evidence).  In contrast, the new OGE declaration states that concurrence was not required and provides an explanation for this conclusion.  PFR File, Tab 1 at 28.  In light of this declaration, we find our prior decision in *Jonson I* was clearly erroneous, and therefore we do not apply the law of the case doctrine to our finding that prior OGE concurrence was required for the minimum fitness regulations.

of interest; evaluating the need for changes in agency ethics and conflict of interest rules and regulations to make them consistent with conflict of interest laws; and providing information on, and promoting the understanding of, ethical standards in executive agencies.[9]  5 U.S.C. app. § 402(b)(1), (12), (14); 5 C.F.R. § 2635.105 (discussing the requirement that agencies obtain concurrence from OGE for regulations supplementing OGE's standards of ethical conduct for employees of the executive branch).

¶13    The new OGE declaration responds to our *Jonson I* decision.  PFR File, Tab 1 at 28.  The declaration states that "OGE concurrence was not required under 12 U.S.C. § 1822(f)(2)" for the minimum fitness regulations.  PFR File, Tab 1 at 28.  As a matter of comity and cooperation, we defer to OGE's determination that FDIC was not required to obtain its approval before promulgating the minimum fitness regulations.  Comity is the discretionary practice of forums to recognize each other's acts.  BLACK'S LAW DICTIONARY 303 (9th ed. 2009); *see Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 254 (1951) (observing that it is proper for the court to refer to an administrative forum a matter that falls within its authority both as a matter of comity and to avoid conflict).  Based on policy considerations of comity and cooperation with the Equal Employment Opportunity Commission (EEOC) as a coequal tribunal, the Board has previously exercised its discretion to defer to EEOC's procedural determinations regarding whether an appellant made a valid election between the Board and equal employment opportunity processes. *Gomez-Burgos v. Department of Defense*, 79 M.S.P.R. 245, ¶ 10 (1998) (observing that the Board and EEOC are coequal in the mixed-case process); *cf. Cloutier v. U.S. Postal Service*, 89 M.S.P.R. 411, ¶ 6 (2001) (deferring to the

---

[9] In connection with these first two functions, OGE consults with, or seeks the assistance of, the Attorney General and OPM.  5 U.S.C. app. § 402(b)(1), (12).

employing agency's determination that a discrimination complaint was untimely). This deference is based on the recognition of EEOC's major responsibility for the equal employment opportunity process and a desire not to frustrate EEOC's goals. *Dawson v. U.S. Postal Service*, 45 M.S.P.R. 194, 197 (1990). Similarly, we find here that OGE is primarily responsible for oversight of the ethical standards of federal employees. *See Special Counsel v. Nichols*, 36 M.S.P.R. 445, 455 (1988) (recognizing that OGE is the agency primarily responsible for developing rules and regulations pertaining to conflicts of interest and standards of conduct). Our prior finding in *Jonson I* is contrary to OGE's determination that its concurrence in the minimum fitness regulations was not required and could create confusion. Therefore, we find this situation one in which it is appropriate to defer.

¶14     In light of our ruling here, we reverse our prior finding in *Jonson I* that section 1822(f)(2), and not section 1822(f)(4), of the RTCCA empowers FDIC to prescribe the conduct for which it removed the appellant. *Jonson I*, 121 M.S.P.R. 56, ¶ 12. Section 1822(f)(2) requires FDIC to obtain OGE concurrence before prescribing regulations that supplement the ethics and conflict of interest rules and regulations issued by OGE. The declaration from OGE compared the minimum fitness regulations to OGE's own regulatory authority and concluded that the minimum fitness regulations did not require OGE's approval because they did not "modify or expand the government-wide Standards of Ethical Conduct for Executive Branch Employees, nor do they regulate an area reserved for supplemental agency regulations (such as: outside activity limitations, prior approval requirements and prohibited holding restrictions)." PFR File, Tab 1 at 28. Therefore, we conclude that FDIC was not required to promulgate the minimum fitness regulations under section 1822(f)(2).

¶15     We also agree with FDIC that our prior ruling incorrectly found that it lacks authority under section 1822(f)(4) to regulate employee conduct. *Id.* at 12-17; *see Jonson I*, 121 M.S.P.R. 56, ¶ 12. In evaluating an agency's construction of a statute, we look first to congressional intent. *Chevron, U.S.A.,*

*Inc. v. Natural Resources Defense Council, Inc.*, [467 U.S. 837](), 841-42 (1984). Absent clear congressional intent, as here, we next examine whether the agency was explicitly charged with filling in a gap left in the legislation.[10] *Id.* at 843-44. Where, as here, we find that it was, the agency's regulations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844. Express congressional authorization to an agency to engage in rulemaking, and the use of the notice and comment procedures in promulgating such rules, are significant indicators that *Chevron* deference is appropriate. *Mayo Foundation for Medical Education & Research v. United States*, [562 U.S. 44](), 57-58 (2011).

¶16        The text of section 1822(f)(4) provides that FDIC may "prescribe regulations . . . for ensuring that any individual who is performing, directly or indirectly, any function on behalf of the Corporation meets the minimum standards of competence, experience, integrity and fitness." [12 U.S.C. § 1822](f)(4)(A). No OGE approval is required for the subject regulations. Therefore, FDIC was charged with filling any gaps left in the statute with the minimum fitness regulations. In promulgating the minimum fitness regulations, FDIC relied on section 1822(f)(4)(E), which requires that the minimum fitness regulations prohibit certain behaviors, including "a pattern or practice of defalcation regarding obligations to insured depository institutions." Minimum

---

[10] FDIC argues that it has authority to promulgate the minimum fitness regulations under section 1822(f)(4) of the RTCCA because: (1) the language of that section, supported by the legislative history, unambiguously permits it to promulgate the regulations; (2) the subheadings contained in the RTCCA were borrowed from its predecessor statute, and therefore we erred in relying on them to interpret section 1822(f) in our decision in *Jonson I*; and (3) the plain text of [12 U.S.C. § 1822](f)(4)(E) may serve as the basis for its removal of the appellant. PFR File, Tab 1 at 11-22, 24. In light of OGE's declaration, we believe it is now clear that FDIC has authority to promulgate the minimum fitness regulations under section 1822(f)(4). We find it unnecessary, therefore, to reach FDIC's remaining arguments.

Standards of Fitness for Employment with the Federal Deposit Insurance Corporation, 61 Fed. Reg. 28,725, 28,726 (June 6, 1996). Further, before finalizing its regulations, FDIC sought notice and comment. Minimum Standards of Fitness for Employees with the Federal Deposit Insurance Corporation, 61 Fed. Reg. 5956 (Feb. 15, 1996). We find the agency's reliance on section 1822(f)(4) to be appropriate, and we give its regulations controlling weight.

FDIC is not constrained by the definition of defalcation in the bankruptcy code.

¶17        In her certified rulings on issues 3 and 4, the administrative judge found that FDIC's definition of defalcation in the minimum fitness regulations was broader than the definition in the bankruptcy code, but that FDIC was permitted to use this broader definition. IAF, Tab 12 at 6-7, Tab 16 at 1. Both the proposed removal and removal decision relied on the minimum fitness regulations' definition of a pattern or practice of defalcation to include "[a] history of financial irresponsibility with regard to debts owed to insured depository institutions which are in default in excess of $50,000 in the aggregate." IAF, Tab 4 at 82, 124 of 129 (quoting 12 C.F.R. § 336.3(i)(1)). Relying on the bankruptcy code, the appellant argued that this definition is too broad because it does not require a fiduciary relationship. IAF, Tab 11 at 8-9. The agency argued that the definition of defalcation from the bankruptcy code is irrelevant and that its own definition in the minimum fitness regulations is entitled to deference. IAF, Tab 10 at 10-12, Tab 13 at 10. We agree. Therefore, we find it unnecessary to address the administrative judge's ruling regarding certified issue 3, and we agree with her ruling regarding certified issue 4.

¶18        An agency has the right "to establish and enforce reasonable rules governing the workplace." *Carosella v. U.S. Postal Service*, 816 F.2d 638, 642 (Fed. Cir. 1987); *Miller v. U.S. Postal Service*, 7 M.S.P.R. 572, 577-78 (1981), *aff'd*, 712 F.2d 1006 (6th Cir. 1983). Thus, the Board has held that, when an agency charges an employee with violating its own policy or rule on sexual harassment, it is not required to prove Title VII's sexual harassment standards.

*Hillen v. Department of the Army*, 35 M.S.P.R. 453, 462 (1987).  We also have recognized that an agency has a right to promulgate and enforce reasonable regulations governing its employees' ethical conduct.  *Miller*, 7 M.S.P.R. at 577-78.

¶19        The minimum fitness regulations are intended to "state the minimum standards of fitness and integrity required" of those providing services on FDIC's behalf.  12 C.F.R. § 336.2(b).  The prohibition on defalcation in the regulations is limited to "obligations to insured depository institutions," in other words, those banking institutions and savings associations that FDIC insures.  12 U.S.C. § 1813(c)(2) (defining insured depository institutions); 12 C.F.R. §§ 336.3(h) (same), 336.5(a)(3) (limiting the prohibition on defalcation to insured depository institutions).  According to the agency, the purpose of the prohibition on a history of financial irresponsibility is to preserve its integrity and credibility.  PFR File, Tab 1 at 25-26; *see* 61 Fed. Reg. at 28,727 (explaining the purposes of the prohibition on a pattern or practice of defalcation).  Both the proposed removal and removal decision relied on the minimum fitness regulation's definition of a pattern or practice of defalcation as "[a] history of financial irresponsibility with regard to debts owed to insured depository institutions which are in default in excess of $50,000 in the aggregate."  IAF, Tab 4 at 82, 124 of 129 (citing 12 C.F.R. § 336.3(i)(1)).  Given FDIC's relationship with the institutions that it insures, we find that the agency's definition of a pattern or practice of defalcation is a reasonable exercise of its right to establish workplace rules.

¶20        In addition, we find that the agency's prohibition on a pattern or practice of defalcation is a valid exercise of its regulatory authority under the RTCCA.  *See Chevron*, 467 U.S. at 841-44.  Congress specifically contemplated that the minimum fitness regulations would prohibit individuals who "demonstrated a pattern or practice of defalcation regarding obligations to insured depository institutions . . . from performing any service on behalf of [FDIC]."  12 U.S.C. § 1822(f)(4)(E)(iii).  As discussed above, FDIC provided public notice of, and

comment on, what are now codified as the minimum fitness regulations. 61 Fed. Reg. at 5956. Included in the proposed regulations was the current definition of a pattern or practice of defalcation. *Compare id.* at 5959 (containing the definition in the final rule), *with* 12 C.F.R. § 336.3(i) (containing the identical definition in the minimum fitness regulations). The definition has been in place since 1996. *See* 61 Fed. Reg. at 28,729 (final rule); *see also Barnhart v. Walton*, 535 U.S. 212, 221-22 (2002) (indicating that the fact that an agency interpretation has been longstanding weighs in favor of applying *Chevron* deference despite a lack of "'notice and comment' rulemaking"). We find that FDIC's definition of defalcation is not arbitrary or capricious, and is consistent with the RTCCA.[11]

Removal is the mandatory penalty for a pattern or practice of defalcation.

**¶21**    We did not reach the certified ruling in *Jonson I* on issue 5 that, if FDIC established by preponderant evidence that the appellant violated the minimum fitness regulations, he would not necessarily be subject to mandatory removal. *Jonson I*, 121 M.S.P.R. 56, ¶ 9 n.2. We do so now, finding that, under the RTCCA, the only penalty available for a pattern or practice of defalcation is removal.

¶22    The RTCCA states that the minimum fitness regulations "shall prohibit any person who does not meet [them] from . . . becoming employed by [FDIC] or otherwise performing any service for or on behalf of [FDIC]." 12 U.S.C. § 1822(f)(4)(B)(ii). It also specifies that FDIC's minimum fitness regulations

---

[11] The agency's definition of a pattern or practice of defalcation contains an exception for defaults "caused by catastrophic events beyond the control of the employee such as death, disability, illness or loss of financial support." 12 C.F.R. § 336.3(i)(3). The appellant claimed that the illnesses of his wife and children and the 2008 collapse of the housing market precipitated his indebtedness. IAF, Tab 4 at 89-90 of 129. In light of this regulatory exception for catastrophic events, the administrative judge should determine on remand whether the agency proved the charge of defalcation, including whether it properly found that the appellant did not fall within this exception.

"shall . . . prohibit any person who has . . . demonstrated a pattern or practice of defalcation regarding obligations to insured depository institutions . . . from performing any service on behalf of [FDIC]." 12 U.S.C. § 1822(f)(4)(E)(iii). The U.S. Court of Appeals for the Federal Circuit interpreted similar statutory language in *Delong v. Department of Health & Human Services*, 264 F.3d 1334 (Fed. Cir. 2001), to find that it required removal. At issue in *Delong* was language from 25 U.S.C. § 3207. 264 F.3d at 1340-41. In pertinent part, the statute required the Secretary of Health and Human Services to prescribe "minimum standards of character" regulations that would ensure that employees in regular contact with Indian children had not been found guilty of certain enumerated crimes. *Id.* (citing 25 U.S.C. § 3207(a)(3), (b)). In rejecting the employee's argument that the agency was required to consider mitigating factors prior to removing her, the court observed that "the only way [the Department of Health and Human Services] can 'ensure' that current employees meet the minimum standards of character is to remove employees who fail to meet the standards."[12] *Delong*, 264 F.3d at 1341; *cf. James v. Tablerion*, 363 F.3d 1352, 1355, 1358-59 (Fed. Cir. 2004) (holding that the election of the penalty of removal was not reviewable where the subject statute mandated removal for the charged conduct and gave exclusive discretion to a specific individual within the agency to decide whether to mitigate, and the designated official had made a determination not to do so (relying on 26 U.S.C. § 7804 note)).

¶23        Similarly, the statute at issue here contemplates that individuals who engage in a pattern or practice of defalcation will not perform service on behalf of FDIC. The only way to avoid such service is if employees who violate the regulations are removed. FDIC has given effect to the statute by stating in the

---

[12] The appellant argued, below, that such a mandatory penalty is not appropriate for a charge that is not based on misconduct. IAF, Tab 11 at 10. We do not find meaningful this characterization of the charged behavior.

minimum fitness regulations that employees not in compliance with the regulations "shall be terminated." 12 C.F.R. § 336.8(a). Assuming that the agency proves both the charge and that the appellant's removal is for such cause as to promote the efficiency of the service by preponderant evidence, the administrative judge should not mitigate the penalty of removal.[13]

## ORDER

¶24    For the reasons discussed above finding that the Board's prior reversal of the appellant's removal was in error, we CANCEL the order of interim relief and REMAND this case to the regional office for further adjudication.[14]


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

---

[13] We therefore modify our finding in *Jonson I* regarding issue 6 to find that the mandatory penalty for a pattern or practice of defalcation is termination. *See Jonson I*, 121 M.S.P.R. 56, ¶¶ 6, 9.

[14] On remand, the appellant should be provided with an opportunity to reinstate his affirmative defenses because they appear to have been withdrawn in reliance on the Board's decision in *Jonson I*.  IAF, Tab 32 at 4; *see Jonson I*, 121 M.S.P.R. 56, ¶¶ 18-19.